# In the United States Court of Appeals for the Ninth Circuit

No. 22-15872

_____

In re: BARD IVC FILTERS PRODUCT LIABILITY LITIGATION

DORIS JONES,
Plaintiff,
v.
C. R. BARD, INC., a New Jersey corporation; BARD PERIPHERAL
VASCULAR, INC., a subsidiary and/or Division of defendant C.R. Bard,
Inc., an Arizona corporation,
Defendants-Appellees

BABBITT & JOHNSON PA; BARON & BUDD, PC; COMMON BENEFIT
FEE AND COST COMMITTEE; BEUS GILBERT MCGRODER PLLC;
BOSSIER & ASSOCIATES PLLC; BRANCH LAW FIRM; BRENES LAW
GROUP, P.C.; DALIMONTE RUEB STOLLER LLP; FARACI LANGE LLP;
FARRIS RILEY & PITT LLP,
Appellees

v.

LAW OFFICES OF BEN C. MARTIN; MARTIN BAUGHMAN PLLC,
Movants-Appellants

_____

On Appeal from the U.S. District Court for the
District of Arizona, No. 2:15-md-02641-DGC
(Honorable David G. Campbell, Senior U.S. District Judge)

_____

BRIEF FOR APPELLANTS

_____

Howard J. Bashman
500 Office Center Drive
Suite 400
Fort Washington, PA 19034
(215) 830-1458

Ben C. Martin
Laura J. Baughman
MARTIN | BAUGHMAN, PLLC
3141 Hood Street, Suite 600
Dallas, TX 75219
(214) 761-6614

Counsel for Movants/Appellants

# CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, movant/appellant Martin|Baughman, PLLC hereby states that it has no parent corporations, and no publicly held corporations own 10% or more of its stock.

Respectfully submitted,

Dated: October 17, 2022    /s/ Howard J. Bashman
            Howard J. Bashman
            500 Office Center Drive
            Suite 400
            Fort Washington, PA 19034
            (215) 830-1458

            Counsel for movants/appellants

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT.........................................................i

STATEMENT OF SUBJECT MATTER AND APPELLATE
     JURISDICTION ...........................................................................1

ISSUE ON APPEAL ........................................................................2

STATEMENT OF THE CASE ................................................................3

   A. Relevant Factual History ...........................................................3

   B. Relevant Procedural History........................................................9

SUMMARY OF THE ARGUMENT.................................................12

ARGUMENT...................................................................................14

   A. Standard Of Review ...................................................................14

   B. A Federal District Court Presiding Over An MDL Proceeding
      Lacks The Power To Order Attorneys' Fees And Costs
      Holdbacks On Claims And Cases That Were Never Part Of The
      MDL Proceeding .........................................................................15

   C. The Reasons The District Court Gave For Applying Common
      Benefit Holdbacks To Claims And Cases That Were Never Part
      Of The MDL Proceeding Fail To Withstand Scrutiny...........................25

   D. Equitable Considerations Do Not Justify Affirming The District
      Court's Order Imposing Holdbacks On Cases Never Pending
      Before The MDL Court...............................................................29

CONCLUSION ..................................................................................................34

STATEMENT OF RELATED CASES ...............................................................35

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Axiom Foods, Inc.* v. *Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017)...........14

*County of San Mateo* v. *Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022).................14

*Grupo Mexicano de Desarrollo S.A.* v. *Alliance Bond Fund, Inc.*,
    527 U.S. 308 (1999) .......................................................................29

*Hartland* v. *Alaska Airlines*, 544 F.2d 992 (9th Cir. 1976)................12, 19, 22, 23

*Hicks* v. *Small*, 69 F.3d 967 (9th Cir. 1995) .........................................14

*In re Avandia Mktng. Sales Practices*,
    617 F. App'x 136 (3d Cir. 2015) .......................................................1, 20, 22

*In re Genetically Modified Rice Litig.*,
    764 F.3d 864 (8th Cir. 2014)...........................................1, 12, 19, 20, 22, 32

*In re: Roundup Prods. Liab. Litig.*,
    544 F. Supp. 3d 950 (N.D. Cal. 2021) ............3, 9, 10, 12, 13, 23-29, 32, 33

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*,
    953 F.2d 162 (4th Cir. 1992)...........................................................19

*Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ........................15

*Negrete* v. *City of Oakland*, 46 F.4th 811 (9th Cir. 2022)....................................15

*Schwarzenegger* v. *Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ..........15

*Vincent* v. *Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977) .............12, 22, 23

**Statutes**

28 U.S.C. §1291.................................................................................................2

**Court Rules**

Fed. R. App. P. 26.1 ..........................................................................................i

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDIC-TION

Whether the district court possessed the judicial authority to assess common benefit fee and costs holdbacks on cases that were never filed in any court, in cases that were filed in federal court after the *In re: Bard IVC Filters Products Liab. Litig.* multidistrict litigation had closed, and in cases pending in state court is the central issue presented in this appeal. The movants-appellants in this case assert herein that the district court lacked the judicial power to order holdbacks in those cases.

The issue presented herein is already the subject of a circuit split. *Compare In re Genetically Modified Rice Litig.*, 764 F.3d 864, 873-74 (8th Cir. 2014) (holding no such jurisdiction exists) *with In re Avandia Mktng. Sales Practices*, 617 F. App'x 136, 141-44 & n.5 (3d Cir. 2015) (holding that so long as an attorney representing claimants in an MDL proceeding agreed that assessments could apply to his state court clients, such assessments could be enforced against the attorney's share of his state court clients' recoveries).

On May 20, 2022, the U.S. District Court for the District of Arizona issued an order denying the motion of the Law Offices of Ben C. Martin and the law firm Martin|Baughman, PLLC to exempt the recoveries of clients who had

never filed suit in any court, who had filed suit in federal court after the Bard IVC Filters MDL had closed, and who had filed suit in state court from common benefit fee and expense assessments due to the MDL court's lack of jurisdiction over those cases. ER-43-67.

On June 6, 2022, movants/appellants the Law Offices of Ben C. Martin and the law firm Martin|Baughman, PLLC filed a timely notice of appeal from the district court's May 20, 2022 order to this Court. ER-168.

This Court possesses appellate jurisdiction pursuant to 28 U.S.C. §1291.

## ISSUE ON APPEAL

Whether the district court possessed judicial power to assess MDL common benefit attorneys' fee and costs holdbacks against cases never filed in any court, cases filed in federal court after the MDL had closed, and cases filed in state court, simply because the claimants in these cases were represented by a law firm that was deemed bound by a participation agreement, incorporated into an order of the MDL court, providing that fee and costs assessments would apply to "all un-filed cases, tolled cases, and/or cases filed in state court in which [the law firm has] a fee interest."

## STATEMENT OF THE CASE

### A. Relevant Factual History

The question whether a federal district court presiding over a multidistrict litigation proceeding has the power to assess so-called "common benefit" attorneys' fees and cost holdbacks against cases that were never filed in any court, were filed and remained pending in state court, or were filed in federal court after the MDL proceeding closed has gained renewed urgency within the Ninth Circuit in the aftermath of U.S. District Judge Vince Chhabria's recent ruling in *In re: Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950 (N.D. Cal. 2021).

In that decision, Judge Chhabria concluded that it was highly doubtful whether such MDL fee and costs holdbacks could be assessed against any cases other than those that were a part of the MDL proceeding itself, even if the lawyer representing non-MDL claimants also represented other clients in the MDL proceeding and executed a participation agreement whereby the lawyer agreed that such holdbacks would apply to the recoveries of all of his or her clients with claims involving Roundup against Monsanto, whether those clients had suits in the MDL proceeding or not.

Lead counsel in the *In re Roundup* MDL proceeding have appealed to this Court from Judge Chhabria's ruling concerning common benefit fees and costs holdbacks, and that appeal (pending at No. 21-16228 (9th Cir.)) is fully briefed and scheduled for oral argument before a three-judge panel of this Court in Portland, Oregon on October 20, 2022, three days after the due date for this Brief for Appellants. This Court's ruling in that appeal may have a significant impact on the outcome of this appeal.

\* \* \* \* \*

The Martin|Baughman, PLLC law firm has represented thousands of victims of accidents and injuries caused by catastrophic vehicular and trucking accidents, oil field explosions, medical and hospital negligence, medical device and pharmaceutical design defects, and personal injuries caused by negligence and gross negligence. Before that law firm was formed, many of those same lawyers practiced at the Law Offices of Ben C. Martin. This brief shall refer to these two entities — the movants/appellants herein — collectively as BCM.

BCM has represented a total of 507 clients who sustained personal injuries as the result of having IVC filters manufactured and marketed by C.R. Bard implanted into their bodies. ER-122. Two hundred and one of those

– 4 –

claimants filed lawsuits that were transferred and coordinated for pretrial proceedings in MDL No. 2641, known as *In re: Bard IVC Filters Prod. Liab. Litig.*, which had been pending in the U.S. District Court for the District of Arizona. ER-122.

BCM also represented another 264 clients who had sustained injuries as the result of Bard IVC filters but never filed suit against Bard in any court. ER-122. An additional 41 of BCM's clients filed suit against Bard in federal court after the MDL proceeding had closed in May 2019 — when the MDL court ordered that no new cases could be filed in or transferred to the MDL proceeding. ER-122. And BCM represented one client who filed suit against Bard in state court, where that suit remained when it settled. ER-122.

Early in the *In re: Bard IVC Filters Prods. Liab. Litig.*, on December 18, 2015, U.S. District Judge David G. Campbell issued Case Management Order 6, which created a common benefit fund for the reimbursement of attorneys' fees and costs incurred for the common benefit in that MDL proceeding. ER-133. CMO 6 established a six percent assessment for attorneys' fees, which was to be paid from the attorneys' fee portion of any recovery against Bard, and a two percent assessment for costs, which was to be paid from the claimants' portion of any recovery against Bard. ER-142, ER-131. The order

directed Bard to pay these holdback amounts directly into the designated common fund bank account, so that the holdbacks never passed through the hands of individual plaintiffs' counsel or their clients. ER-143.

CMO 6 included as an exhibit a "Participation Agreement" that counsel representing claimants against C.R. Bard could sign in order to obtain the right to access common benefit work product in exchange for agreeing to have the relevant attorneys' fees and costs holdbacks assessed against all of the recoveries that the signer's clients obtained on their claims against Bard. ER-146-159. According to that document:

> Counsel who sign this Participation Agreement further agree that the assessment shall apply to all un-filed cases, tolled cases, and/or cases filed in state court in which they have a fee interest, regardless of the size of that fee interest.

ER-149.

As is common in MDL proceedings, lead counsel designated by the district court was authorized to conduct discovery pertaining to all transferred cases, and individual counsel were not permitted to pursue such case-wide discovery on their own. Thus, counsel whose clients' cases were transferred to the MDL had little alternative other than to enter into the

Participation Agreement in order to competently represent their clients whose cases were pending in the MDL proceeding.

In the dispute giving rise to this appeal, neither side has been able to locate any Participation Agreement signed by BCM. ER-82-83. The district court found, in the ruling at issue on appeal, that BCM was bound by the participation agreement as the result of BCM's having served as a member of Plaintiffs' Steering Committee in this MDL proceeding. ER-44-45. For purposes of this appeal, BCM does not dispute that its cases that were pending in the MDL proceeding are properly subject to the attorneys' fees and costs assessments at issue. Rather, the sole question presented is whether, based on the Participation Agreement and/or some other source of authority, the district court had the power to order attorneys' fees and costs holdback assessments against cases never filed in any court, cases filed in federal court after the MDL proceeding concluded, and cases filed in state court in which BCM served as claimants' counsel.

By means of an order issued in May 2019, the district court increased the attorneys' fee share of the holdback, which is assessed against the fee of the plaintiffs' counsel, to eight percent. ER-132. The district court, however, kept the costs holdback percentage at two percent. ER-132.

When the *In re: Bard IVC Filters Prods. Liab. Litig.* formally concluded in May 2019, more than 8,000 separate cases had been a part of that MDL proceeding. ER-43. As noted above, BCM represented the claimants in 201 of those MDL cases. ER-122. An additional 306 of BCM's clients with IVC filter injury claims against Bard never filed suit in any court, filed suit in federal court after the MDL proceeding concluded, or filed suit in state court. ER-122.

In early November 2021, BCM, on behalf of its clients, reached a settlement with C.R. Bard to resolve all IVC filter-related cases and claims that BCM was handling against Bard. ER-122. The specific settlement amounts of these cases are confidential pursuant to agreements between BCM, its clients, and Bard. However, the total assessments that Bard is paying into the MDL fees and costs holdback account with regard to clients of BCM who had cases in the MDL proceeding totaled approximately 63 percent of the total assessment on BCM's cases/clients. ER-41.

This appeal concerns the remaining approximately 37 percent of total holdbacks from clients of BCM who never filed suit in any court, who filed suit in federal court after the MDL proceeding had closed, or who filed suit in state court. ER-41. In non-MDL cases in which BCM represented the

claimants, the total amount of money held back for costs from the clients'
share of their recoveries was itself far from insignificant, approaching the
mid-six figures.

## B. Relevant Factual History

After the settlements of the IVC filter cases and claims for all participating
clients of BCM were documented and Bard was on the verge of paying ten
percent of the gross total of those settlements into the *In re: Bard IVC Filters
Prods. Liab. Litig.* MDL fees and costs assessment account under the
supervision of the U.S. District Court for the District of Arizona, BCM on
January 25, 2022 filed a motion in the MDL proceeding seeking to exempt
certain cases and claimants from those common benefit assessments. ER-110.

For purposes relevant to this appeal, BCM, in reliance on Judge
Chhabria's reasoning in *In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950
(N.D. Cal. 2021), asked the district court in this case to exempt the
settlements recovered by clients of BCM who never filed suit in any court,

had filed suit in federal court after the MDL proceeding had concluded, and had filed suit in state court.[1] ER-110.

The *In re Bard IVC Filters Products Liability Litigation* Common Benefit Fees and Costs Committee filed a timely opposition to the motion of BCM to exempt those categories of cases from common benefit fees and costs assessments. ER-81.

On May 20, 2022, after the motion had been fully briefed, the district court, per Senior District Judge David G. Campbell, issued an order denying the motion to exempt the recoveries of BCM's clients who did not have cases pending in the MDL proceeding from common benefit fees and costs assessments. ER-43-67.

The district court's 25-page order explaining the basis for its denial of BCM's motion to exempt began by explaining that Judge Chhabria's decision in *Roundup* was distinguishable. ER-46-51. Next, the district court concluded that it had the authority to impose holdbacks on the recoveries of

---

[1] BCM's motion also sought to reduce the attorneys' fee assessments on cases that had been a part of the MDL proceeding to reflect the substantial additional work that BCM performed in those cases to maximize their value. ER-118-120. The district court also denied this relief, ER-65-67, and BCM is not seeking appellate review of that aspect of the district court's ruling.

all clients of the Martin law firms with IVC filter claims against Bard pursuant to the district court's inherent power and the common fund doctrine. ER-52-64. Lastly, the district court concluded that reliance-related concerns also compelled the denial of the Martin law firms' motion to exempt:

> The PSC and other attorneys who performed compensable common benefit work justifiably relied on Participating Counsel's agreement to pay common benefit assessments on all cases in which Participating Counsel have a fee interest. Now, more than six years after BCM agreed to pay assessments on all its cases in return for access to common benefit work, and after obtaining and utilizing that work, BCM seeks to avoid paying assessments on its non-MDL cases. Doc. 22144 at 1-2, 11. Simple fairness requires that its request be denied.

ER-64-65 (footnotes omitted).

On June 6, 2022, BCM filed a timely notice of appeal to this Court from the district court's May 20, 2022 order denying the motion to exempt the recoveries of certain of BCM's clients from common benefit fees and costs assessments. ER-168.

Also on June 6, 2022, BCM filed in the district court an emergency motion to stay distribution of the challenged fees and costs assessment holdbacks pending appeal. ER-38. After that motion was fully briefed and the district court heard oral argument on it, Judge Campbell on August 1, 2022 issued

an order nominally denying the motion for a stay while simultaneously directing that the challenged fees and costs assessment holdbacks be retained in the common fund account pending the outcome of BCM's appeal in this matter. ER-5-9.

## SUMMARY OF THE ARGUMENT

This Court should hold — in accordance with Judge Chhabria's recent ruling in *In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950 (N.D. Cal. 2021), the Eighth Circuit's ruling in *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 874 (8th Cir. 2014), and this Court's earlier rulings in *Hartland* v. *Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976), and *Vincent* v. *Hughes Air West, Inc.*, 557 F.2d 759, 765-66 (9th Cir. 1977) — that a federal district court supervising an MDL proceeding lacks the judicial power to order attorneys' fees and costs holdbacks pertaining to claims and cases that were never part of the MDL proceeding.

In this case, the MDL court exceeded its lawful judicial power when it ordered that common benefit attorneys' fees and costs holdbacks should apply to the settlement recoveries obtained by clients of the BCM law firms, movants-appellants herein, who had never filed suit in any court, who had

filed suit in federal court after the MDL proceeding had closed, or who had filed suit in state court, where the case remained at the time it settled.

BCM does not dispute that MDL courts have the power to impose attorneys' fees and costs holdback assessments to compensate for work performed for the common benefit in cases that were a part of the MDL proceeding. In this MDL proceeding alone, the holdbacks imposed on the recoveries of BCM's clients who had cases pending in the MDL proceeding totaled a very sizeable amount of money, none of which BCM is challenging by means of this appeal.

As Judge Chhabria recognized in *In re Roundup*, there are limits on a federal district court's judicial authority to impose attorneys' fees and costs holdbacks to fund common benefit work in an MDL proceeding, and those limits preclude an MDL court from imposing such holdbacks on claims and cases that were not part of the MDL proceeding. Neither a federal district court's inherent power nor the common fund doctrine authorized the assessment of holdbacks on claims and cases that were not part of the MDL proceeding, notwithstanding the district court's erroneous conclusion to the contrary in this case.

For the reasons set forth herein, this Court should reverse the district court's order holding that common benefit attorneys' fees and costs assessments could lawfully be applied against the recoveries that BCM achieved for its clients on claims and cases that were never filed in any court, were filed in federal court after the MDL closed, or were filed in state court — and thus were never a part of this MDL proceeding.

## ARGUMENT

### A. Standard Of Review

This Court exercises *de novo* review over challenges to a district court's exercise of subject matter jurisdiction, personal jurisdiction, and judicial power more generally. *See County of San Mateo* v. *Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022) ("We review questions of . . . subject matter jurisdiction de novo."); *Hicks* v. *Small*, 69 F.3d 967, 969 (9th Cir. 1995) ("The existence of subject matter jurisdiction is a question of law reviewed de novo."); *see also Axiom Foods, Inc.* v. *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017) (internal quotations omitted) ("We review de novo [a] district court's determination of whether personal jurisdiction may be properly

exercised."); *Schwarzenegger* v. *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (same).

**B. A Federal District Court Presiding Over An MDL Proceeding Lacks The Power To Order Attorneys' Fees And Costs Holdbacks On Claims And Cases That Were Never Part Of The MDL Proceeding**

It is axiomatic that federal courts are courts of limited jurisdiction. *See Negrete* v. *City of Oakland*, 46 F.4th 811, 816 (9th Cir. 2022) (citing *Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Unless a federal district court has subject matter jurisdiction over a case and personal jurisdiction over the parties to that case, the federal district court lacks the judicial power to issue orders that are binding on the parties to the case.

This appeal involves cases that were never filed in any court, cases pending in state court that were never a part of a federal court MDL proceeding, and cases filed in federal court after the MDL proceeding closed (which therefore, by definition, also were never a part of the MDL proceeding).

The order at issue on appeal assesses a two percent holdback against the claimants' recovery — not from BCM's share of its counsel fees — for MDL common fund costs on claims that have never been filed in any court, cases

that were filed in federal court after the MDL closed, and cases that were filed in state court. How the MDL court possesses judicial power over those claims or the claimants who possess those claims neither appellees nor the district court have ever satisfactorily explained.

To be sure, the district court possessed authority over BCM in its role as counsel in the cases in which BCM was representing claimants with cases in the MDL proceeding. And that authority, BCM concedes, was sufficient to empower the district court to order common benefit attorneys' fees holdbacks from BCM's share of counsel fees in cases in which BCM represented claimants in the MDL proceeding.

However, the power that the district court determined it could exercise against BCM was far more wide-ranging than that. The district court concluded that it had the authority to control and direct the disposition of a portion of the recoveries that claimants represented by BCM achieved outside of the MDL proceeding — recoveries obtained by claimants who had never filed suit in any court, who had filed suit only in state court, or who had filed suit in federal court after the MDL proceeding had closed.

BCM respectfully submits that whatever jurisdiction and power the district court possessed over BCM's attorneys' fee recoveries on claims

against C.R. Bard were limited to those cases in which BCM represented claimants in the MDL proceeding itself. To the extent that the district court reached beyond BCM's fee recoveries in MDL cases, the district court exceeded its jurisdiction and acted beyond its lawful power.

Two hypotheticals help illustrate this point. Assume that a BCM attorney was accompanying a client in Pennsylvania who had a claim pending in Pennsylvania state court against C.R. Bard to the client's deposition in Pennsylvania when the automobile operated by the BCM attorney was involved in a car accident, in which the client was injured. If that state court client opted to sue BCM — a law firm incorporated in Texas, which has its principal place of business in Texas — in Arizona federal district court because of BCM's involvement as counsel for other claimants in the C.R. Bard MDL based in that same federal district court, would the Arizona federal district court have personal jurisdiction over BCM? The answer would self-evidently appear to be emphatically "no."

Consider instead that the BCM client in the Pennsylvania state court case against C.R. Bard had her claim presented at trial but was dissatisfied with the amount of the jury's verdict in her favor. Could that client then sue BCM in Arizona federal district court for legal malpractice or breach of contract

seeking to reduce BCM's contingent fee recovery in that state court case? Once again, the answer would appear to emphatically be "no," because the MDL court simply has no authority to adjudicate or reduce the amount of BCM's fee in a case that was never pending in the MDL proceeding. Yet the MDL court is exercising just that same type of unavailable power in the order that is the subject of this appeal by directing the disposition of a portion of BCM's fees in cases that were never pending in the MDL proceeding.

In this case, the MDL district court ruled that because BCM was deemed to have entered into the Participation Agreement, whereby "[c]ounsel who sign this Participation Agreement further agree that the assessment shall apply to all un-filed cases, tolled cases, and/or cases filed in state court in which they have a fee interest, regardless of the size of that fee interest" (ER-149), that court had the jurisdiction and authority to assess common benefit attorneys' fees and costs against all such cases as the result of its authority over BCM as a deemed signatory to that agreement. ER-43-67.

Whether authority over counsel for MDL claimants suffices, or whether the MDL court also must possess jurisdiction over the claimants whose recoveries are being allocated, is at the heart of the circuit split that exists over the question presented in this appeal.

In *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 874 (8th Cir. 2014), the Eighth Circuit ruled that the MDL statute does not give an MDL court "the power to order parties in a case not before it to contribute to the Fund." In support of its holding in that regard, the Eighth Circuit cited to this Court's decision in *Hartland* v. *Alaska Airlines*, 544 F.2d 922, 1001 (9th Cir. 1976), and the Fourth Circuit's ruling in *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.*, 953 F.2d 162, 166 (4th Cir. 1992).

The Eighth Circuit proceeded to explain, in reasoning that applies directly to BCM's appeal herein:

> Lead Counsel argue that the assessments need not be levied on the state-court plaintiffs themselves, but rather may be withheld by Bayer (a party before the district court) or paid by the plaintiffs' counsel (some of whom represent clients in the MDL). Lead Counsel assert that the court has jurisdiction over Bayer and MDL attorneys, so the court can order withholding from their "related" state-court cases. But state-court cases, related or not, are not before the district court. The state-court plaintiffs at issue neither agreed to be part of the federal MDL nor participated in the MDL Settlement Agreement. Even if the state plaintiffs' attorneys participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court plaintiffs and Bayer.

> Lead Counsel also urge that the state-court plaintiffs' counsel benefited from the MDL leadership group's work, so equity requires that they contribute to the Fund. But equity is insufficient to overcome limitations on federal jurisdiction. The

> district court correctly held that it lacked jurisdiction to order
> holdbacks from the state-court recoveries.

*In re Genetically Modified Rice Litig.*, 764 F.3d at 874.

On the other side of the circuit split are two unpublished, non-precedential rulings of the U.S. Court of Appeals for the Third Circuit. The more pertinent of the two rulings, which both arose from the same MDL proceeding, is *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 617 F. App'x 136 (3d Cir. 2015) (unpublished). In that case, the now notorious law firm of Girardi Keese had entered into a participation agreement whereby a seven percent common benefit assessment — consisting of four percent from the attorney's share and three percent from the claimant's share — would apply to all of the law firm's related cases, whether filed or unfiled, in any other jurisdiction, state or federal. *See id.* at 139.

Girardi Keese represented approximately 25 claimants in the MDL proceeding itself but also handled thousands of related cases in a consolidated California state court proceeding involving Avandia. *See id.* The Third Circuit ruled that because the MDL court had authority over the Girardi Keese law firm, that was sufficient to order that the holdback

payments be made on all of that law firm's related cases, even those that were never pending in the MDL proceeding:

> [Because] the District Court incorporated Girardi Keese's Attorney Participation Agreement into Pretrial Order 70, it had jurisdiction to determine whether Girardi Keese breached that agreement and, if so, to remedy that breach.

*Id.* at 142.

The Third Circuit rejected Girardi Keese's jurisdictional challenge as follows:

> This is not, as Girardi Keese argues, finding subject-matter jurisdiction by agreement of the parties. The agreement itself is not the source of the District Court's authority. Rather, the District Court's authority over this dispute arose from its responsibilities to appoint and supervise a coordinating committee of counsel. The agreement was simply incorporated into an order the District Court was empowered to issue.

> Because it was within the District Court's power to issue an order governing how to compensate the Steering Committee for its work and because Girardi Keese's Attorney Participation Agreement was incorporated into that order, the District Court had jurisdiction to adjudicate whether Girardi Keese breached the Attorney Participation Agreement and thereby violated Pretrial Order 70.

*Id.* at 143-44 (footnotes omitted).

In a footnote to its ruling, the Third Circuit opined that the Girardi Keese law firm would be liable to pay the entire seven percent assessment, and

whether that law firm could recover three percent of that assessment from its clients, as the MDL court's original order had envisioned, was a problem for Girardi Keese to resolve on its own. *Id.* at 143 n.5.

The central division between the Eighth Circuit's approach in *Genetically Modified Rice* and the Third Circuit's approach in *Avandia* is over whether the MDL court must have jurisdiction over the cases and claimants whose recoveries are being held back or merely over the attorneys who represent those claimants.

It is therefore quite revealing that this Court employed a claimant-centric, rather than an attorney-centric, approach in two cases raising similar issues. In *Hartland* v. *Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976), this Court issued a writ of mandamus to overturn a federal district court's order imposing common fund fee holdbacks on claimants who either had a case pending in state court or had not filed any case in any court. A little over one year later, in *Vincent* v. *Hughes Air West, Inc.*, 557 F.2d 759, 765-66 (9th Cir. 1977), this Court once again confirmed that a claimant who settles a case without having filed suit in any jurisdiction cannot be required to contribute to common fund work.

To be sure, neither of those two Ninth Circuit decisions involved either counsel who represented clients both within and outside of an MDL proceeding, nor did counsel in those earlier cases sign anything resembling a participation agreement pertaining to cases outside of an MDL proceeding. Nevertheless, *Hartland* and *Vincent* demonstrate that this Court has previously employed a claimant-centric, rather than an attorney-centric, approach to determining when common benefit holdbacks can lawfully be ordered.

As Judge Chhabria explained when considering this Court's rulings in *Hartland* and *Vincent* in his recent opinion in *In re Roundup*, 544 F. Supp. 3d at 964-65:

> To be sure, it's not immediately apparent whether the people who won their appeals in *Hartland* and *Vincent* had hired lawyers who also happened to represent clients in the MDL. But there is no reason to think that the presence of so tenuous a connection between those nonparties and the MDL proceedings would have changed the Ninth Circuit's views about the "usurpation of power" that the district courts had committed. The fundamental problem with lead counsel's argument is that they are thinking too much in terms of the lawyers, and not enough in terms of the clients. The lawyers may think of the recoveries as "their" recoveries — recoveries that come from their "inventory." But that "inventory" consists of people, and each person has their own case against the defendant. Authority over a person's case (and a person's recovery) cannot be created

> simply because that person's lawyer happens to have another case before the district court.

*Id.* (footnote omitted).

In *Roundup*, Judge Chhabria ultimately decided that he would only order holdbacks from cases that were a part of the MDL proceeding, because, among other reasons, it was questionable whether he had the authority to extend holdbacks to claimants who had never filed a case in any court or who had cases pending in state court.[2]

BCM respectfully urges this Court to hold, for the reasons set forth above, that an MDL court lacks the authority to order holdbacks pertaining to cases that were not a part of the MDL proceeding, regardless of whether the claimants in the non-MDL cases were represented by counsel who also represented claimants in the MDL proceeding and thus signed (or, as in this case, was deemed to have signed) a participation agreement.

---

[2]  Judge Chhabria's decision in *Roundup* did not address whether holdbacks can or should apply to cases filed in federal court after an MDL proceeding has closed, because no such cases were before him. But the logic of Judge Chhabria's decision compels the conclusion that he would not have ordered holdbacks applied to such cases.

**C. The Reasons The District Court Gave For Applying Common Benefit Holdbacks To Claims And Cases That Were Never Part Of The MDL Proceeding Fail To Withstand Scrutiny**

The district court, in holding that it had the power to impose common benefit assessments on claimants and cases that were never a part of the MDL proceeding, relied both on that court's inherent power and on the common fund doctrine. ER-52-64.

First, however, the district court in this matter agreed with Judge Chhabria's decision in *Roundup* that "the MDL statute is procedural in nature and does not clearly confer on federal courts the power to create a common benefit fund or make assessments for that fund." ER-52. BCM agrees with the district court's determination in this regard.

Immediately thereafter, however, the district court in this matter ruled that its "inherent managerial power" gave it the authority to enter a case management order imposing common benefit assessments on unfiled and state court cases. ER-54-55.

BCM submits that Judge Chhabria reached a much more legally sound conclusion with regard to the inherent power issue when he reasoned in *Roundup* as follows:

The next question is whether the Court has the authority to require holdbacks from the recoveries of people who are not plaintiffs in the MDL but who happened to hire a lawyer with a client in the MDL. This could include someone who filed a lawsuit in state court and recovered from Monsanto following a judgment or settlement, and it could include someone who filed no lawsuit and settled out of court. The answer is that a district court cannot exert authority over the recovery of a person with so tenuous a connection to the MDL. Neither the common fund doctrine nor the district court's inherent power to control its docket justifies an order affecting the recovery of a nonparty merely because they happened to hire a lawyer with a client in the MDL.

*In re Roundup*, 544 F. Supp. 3d at 963.

Judge Chhabria continued:

If one understands the power to order holdbacks as coming from the inherent docket management authority, it becomes even more obvious that a district court lacks the authority to apply holdbacks to a dispute outside the MDL merely because the plaintiff in that dispute happened to hire a lawyer who represents a plaintiff within the MDL. Under this doctrine, district courts merely have the power to manage their dockets, and the purpose of this power is the efficient and expedient resolution of cases. It's one thing to require holdbacks in your own cases for the purpose of ensuring those cases are litigated and adjudicated properly; it's quite another to insist that you need to manage your docket by issuing orders affecting disputes that are not before you.

*Id.* at 963-64 (internal quotations and citations omitted).

Lastly, Judge Chhabria concluded that "[i]t would stretch the [inherent] power [doctrine] beyond recognition to say that it authorizes MDL courts to

order appearing attorneys to contribute from their contingency fees from non-MDL recoveries to compensate lead counsel." *Id.* at 967.

In short, an MDL court's inherent power to manage the consolidated cases pending before it does not extend to those cases that were never filed in any court, were filed in state court, or were filed in federal court after the MDL proceeding closed. Thus, the district court's reliance on its inherent power as authorizing the wide-ranging nature of its holdback order in this case was without merit.

The district court herein also relied on the common fund doctrine as authorizing the application of its holdback order to cases that were never a part of this MDL proceeding, noting that the common fund doctrine "has been applied repeatedly to MDL cases." ER-62. Once again, BCM respectfully submits that Judge Chhabria had the better part of this argument when he reasoned in *Roundup* as follows:

> As discussed earlier, the connection between the common fund doctrine and the type of holdback order contemplated here is tenuous at best. If it's tenable at all, it's because one similarity persists among many differences: the transaction takes place within the case itself. In the common fund cases, the district court is awarding money from a fund that is part of the case to a plaintiff who is part of the case. If the holdback order were extended to the recoveries of parties in state court or parties with no case at all, any plausible support from the common fund

> doctrine disappears entirely — the court is exercising authority
> over disputes that are not before it and over property that is not
> before it, without any clear limit on the court's reach.

*In re Roundup*, 544 F. Supp. 3d at 963.

Lastly, Judge Chhabria also had it right when he decided that the mere

fact that the non-party's attorney signed a participation agreement in the

MDL proceeding cannot suffice to confer the requisite lawful power on an

MDL court to assess common benefit fees and costs against cases and claims

that were never part of the MDL proceeding:

> As discussed in the preceding subsection, the Eighth Circuit
> and the Ninth Circuit may have considered a district court's
> authority to order holdbacks from the recoveries of nonparties
> to be an issue of subject matter jurisdiction. *In re Genetically
> Modified Rice Litigation*, 764 F.3d at 874; *Vincent*, 557 F.2d at 765-
> 66; *Hartland*, 544 F.2d at 1001. If that's the right way to interpret
> those cases, district courts in those circuits lack the power to
> require a holdback from nonparties whose lawyers signed an
> agreement that they would be bound by a holdback order,
> because parties cannot agree to confer subject matter jurisdiction
> where none exists.

*Id.* at 967. Although Judge Chhabria ultimately concluded that "there is no

need in this ruling to take a position on whether an MDL court has the

authority to require a holdback from a nonparty's recovery as a result of a

lawyer participation agreement," *id.* at 968, the reasoning quoted above

provides persuasive indication of how Judge Chhabria would have resolved

that issue had the need presented itself. He would have concluded, as BCM has argued herein, that a federal district court lacks the power to apply common benefit fees and costs assessment holdbacks against cases that were never a part of the MDL proceeding. And that is precisely what this Court should hold in this appeal.

### D. Equitable Considerations Do Not Justify Affirming The District Court's Order Imposing Holdbacks On Cases Never Pending Before The MDL Court

The Common Benefit Fees and Costs Committee also raised equitable arguments in the district court that led the district court to conclude that it would be unfair to hold that it lacked the power to order assessments against the cases and claims of BCM clients that were never a part of the MDL proceeding. In concluding that equity supported its result, the district court erred. ER-64, ER-89.

To begin with, as Judge Chhabria noted in his *Roundup* opinion, 544 F. Supp. 3d at 959-60, the U.S. Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A.* v. *Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999), recognized that district courts cannot exercise their equitable powers beyond situations where courts have historically invoked them, even if some of the same

principles apply to the new situation. BCM is unaware of any longstanding, historical basis for a court's using its equitable power to enjoin or direct the distribution of funds earmarked for the settlement of cases and claims that were pending in *other courts* or not pending in *any court*. This absence of historical pedigree establishes the unavailability of equity to impose such a remedy here.

In opposing BCM's motion, the Common Benefit Fees and Costs Committee also hypothesized about the injustice that would result if an attorney somehow arranged to have only a single case in an MDL proceeding, thereby entitling him or her to access common benefit work product, which the attorney could then exploit free of charge for the benefit of countless other clients who had cases pending in state court or claims never filed in any court. ER-88. That hypothetical is certainly not this case.

As noted above, the total assessments that Bard is paying into the MDL fees and costs holdback account with regard to clients of BCM who had cases in the MDL proceeding totaled approximately 63 percent of the total assessment on BCM's cases/clients. ER-41.

This appeal, of course, concerns the remaining approximately 37 percent of total holdbacks from clients of BCM who never filed suit in any court, who

filed suit in federal court after the MDL proceeding had closed, or who filed suit in state court. In non-MDL cases in which BCM represented the claimants, the total amount of money held back for costs from the clients' share of their recoveries was itself far from insignificant, approaching the mid-six figures.

BCM represented claimants in 201 MDL cases, while an additional 306 of BCM's clients with IVC filter injury claims against Bard never filed suit in any court, filed suit in federal court after the MDL proceeding closed, or filed suit in state court. ER-122. Thus, the average per-case recovery was far higher for BCM clients who were part of the MDL proceeding than for those who were not. Had those average per-case settlement amounts remained constant, it would have been far preferable for both BCM's clients and for BCM itself to have had as many cases as possible settle within the MDL proceeding, notwithstanding the 10% fees and costs assessments that would have been applicable to those MDL cases.

A final concern that the district court raised asked how federal courts overseeing MDL proceedings can ensure that highly qualified counsel would volunteer to perform common benefit work if the MDL court lacks the power to ensure adequate compensation for that work. ER-55. Moreover,

in this case the Committee contends that it may not ever achieve the compensation anticipated for common benefit work even if the challenged assessments at issue here are upheld. ER-50.

BCM respectfully submits that these concerns are overblown. As Judge Chhabria's opinion explains, there are a variety of ways that those who create common benefit work can be compensated without having to extend beyond proper bounds the power of an MDL court to apply fees and costs assessments to claims and cases not pending before it. *See In re Roundup*, 544 F. Supp. 3d at 966, 968. Moreover, it is quite doubtful that MDL proceedings within the Eighth Circuit have failed to attract highly qualified lead counsel in the aftermath of the *Genetically Modified Rice* decision in which the Eighth Circuit recognized that common benefit assessments can only be applied against cases pending in an MDL proceeding.

It was inappropriate for the district court in this matter to cite to reliance interests, ER-64-65, as a possible justification for expanding an MDL court's power beyond lawful limits. Some MDL proceedings are successful and some are not. Indeed, whether BCM itself recovered in counsel fees what it was hoping to achieve on the claims it was handling against C.R. Bard appears nowhere in the record. It may be the case that BCM is equally or

perhaps even more disappointed with the results achieved in its cases as the Common Benefit Fees and Costs Committee feels toward its likely compensation for common benefit work. As with any type of law practice, contingent fee litigation has its own variety of risks and benefits, and anyone practicing in this field well knows that not every single case will be a smashing success.

In sum, if lead counsel in *Roundup* were so successful in that case that they may now qualify to purchase their own private island, *see Roundup*, 544 F. Supp. 3d at 969, while the attorneys in charge of common benefit work in this case are not, ER-50, that disparity in results is surely not the fault of BCM or its clients. And it certainly does not justify disregarding otherwise applicable limits on the power and authority of an MDL court to order fees and costs assessments on cases that were never filed in any court, were filed in state court, or were filed in federal court after the MDL proceeding closed.

**CONCLUSION**

For the foregoing reasons, this Court should reverse the district court's

order and hold that the district court lacked the power to impose common

benefit attorneys' fee and costs holdbacks on the settlement recoveries from

C.R. Bard of BCM's clients who never filed suit in any court, who filed suit

in state court, and who filed suit in federal court after the MDL proceeding

closed.

Respectfully submitted,

Dated: October 17, 2022

/s/ *Howard J. Bashman*
Howard J. Bashman
500 Office Center Drive
Suite 400
Fort Washington, PA 19034
(215) 830-1458

Ben C. Martin
Laura J. Baughman
MARTIN | BAUGHMAN, PLLC
3141 Hood Street, Suite 600
Dallas, TX 75219
(214) 761-6614

Counsel for movants/appellants

## STATEMENT OF RELATED CASES

In accordance with Ninth Circuit Rule 28-2.6, movants/appellants herein note that this appeal raises an issue that is related to the issues in an appeal currently pending before this Court captioned *In re Roundup Prods. Liab. Litig.*, No. 21-16228 (9th Cir.). The *Roundup* appeal has been fully briefed and is scheduled for oral argument before a three-judge panel of this Court in Portland, Oregon on October 20, 2022.

Respectfully submitted,

Dated: October 17, 2022          */s/ Howard J. Bashman*
                                           Howard J. Bashman
                                           500 Office Center Drive
                                           Suite 400
                                           Fort Washington, PA 19034
                                           (215) 830-1458

                                           Ben C. Martin
                                           Laura J. Baughman
                                           MARTIN | BAUGHMAN, PLLC
                                           3141 Hood Street, Suite 600
                                           Dallas, TX 75219
                                           (214) 761-6614

                                           Counsel for movants/appellants

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,186 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Book Antiqua font.

Dated: October 17, 2022      */s/ Howard J. Bashman*
                                              Howard J. Bashman

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 17, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 17, 2022          */s/ Howard J. Bashman*
                                 Howard J. Bashman