No. 22-15872

_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

In re:  BARD IVC FILTERS PRODUCTS LIABILITY LITIGATION
DORIS JONES, Plaintiff,

v.

C. R. BARD, INC., a New Jersey corporation; BARD PERIPHERAL
VASCULAR, INC., an Arizona corporation, Defendants

_____

LAW OFFICES OF BEN C. MARTIN; MARTIN BAUGHMAN PLLC,
Movants-Appellants

v.

BABBITT & JOHNSON PA; BARON & BUDD, PC; COMMON BENEFIT
FEE AND COST COMMITTEE; BEUS GILBERT MCGRODER PLLC;
BOSSIER & ASSOCIATES PLLC; BRANCH LAW FIRM; BRENES LAW
GROUP, P.C.; DALIMONTE RUEB STOLLER LLP; FARACI LANGE LLP;
FARRIS RILEY & PITT LLP,
Appellees

_____

On Appeal from the U.S. District Court, District of Arizona-Phoenix
Honorable David G. Campbell, Senior U.S. District Judge
No. 2:15-md-02641-DGC

_____

## APPELLEES' ANSWERING BRIEF

_____

Shannon L. Clark (Az No. 019708)
GALLAGHER & KENNEDY PA
2575 E. Camelback Rd., Ste 1100
Phoenix, Arizona  85016
(602) 530-8000
*Attorneys for Appellees Babbitt & Johnson PA; Baron & Budd, PC; Common
Benefit Fee And Cost Committee; Beus Gilbert McGroder PLLC; Bossier &
Associates PLLC; Branch Law Firm; Brenes Law Group, P.C.; Dalimonte Rueb
Stoller LLP; Faraci Lange LLP; Farris Riley & Pitt LLP*

## CORPORATE DISCLOSURE STATEMENT

Not applicable.

# TABLE OF CONTENTS

**Page**

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION...........................................................................................1

ISSUE ON APPEAL......................................................................................1

STATEMENT OF THE CASE........................................................................2

    A.    Relevant Factual History .................................................................2

    B.    Relevant Procedural History ............................................................6

SUMMARY OF THE ARGUMENT ..............................................................8

ARGUMENT .................................................................................................8

    A.    Standard Of Review ........................................................................8

    B.    BCM Waived Any Argument That It Is Not Bound By The
           Participation Agreement Or Amended CMO6....................................9

    C.    BCM Is Bound By The Participation Agreement And In Re
           Roundup Does Not Apply ...............................................................15

    D.    BCM Has The Authority To Bind Its Clients ...................................24

    E.    The District Court's Authority To Assess Recoveries On Cases
           Not Before It Arises From Its Inherent Power To Manage The
           MDL, The MDL Statute, And The Common Fund Doctrine ...........29

    F.    Equitable Considerations Require Affirming The District
           Court's Order Imposing Holdbacks On All Of BCM's Cases...........40

CONCLUSION ............................................................................................44

# TABLE OF AUTHORITIES

**Cases**

*Am. Fam. Mut. Ins. Co. v. Zavala*,
    302 F. Supp. 2d 1108 (D. Ariz. 2003) ............................................................ 25, 26

*Am. Unites for Kids v. Rousseau*,
    985 F.3d 1075 (9th Cir. 2021) ................................................................................9

*Anand v. California Dep't of Developmental Servs.*,
    626 F. Supp. 2d 1061 (E.D. Cal. 2009) ..............................................................27

*Arizona Title Ins. & Tr. Co. v. Pace*,
    445 P.2d 471 (Ariz. Ct. App. 1968) ....................................................................25

*Barnd v. City of Tacoma*,
    664 F.2d 1339 (9th Cir.1982) ..............................................................................41

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .............................................................................................31

*County of San Mateo v. Chevron Corp.*,
    32 F.4th 733 (9th Cir. 2022) ..................................................................................8

*Custom Polymers PET, LLC v. Gamma Meccanica SpA*,
    185 F. Supp. 3d 741 (D.S.C. 2016) .....................................................................17

*Dacanay v. Mendoza*,
    573 F.2d 1075 (9th Cir. 1978) .............................................................................24

*Dietz v. Bouldin*,
    136 S. Ct. 1885 (2016).........................................................................................40

*Espinosa v. United Student Aid Funds, Inc.*,
    553 F.3d 1193 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) ..................................9

*George Nicolais & Associates, Inc. v. Acquvest, Inc.*,
    322 Fed. App'x. 519 (9th Cir. 2009) ...................................................................25

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020) ...............................................................................9

*Grumhaus v. Comerica Sec., Inc.*,
    223 F.3d 648 (7th Cir.2000) ................................................................................10

*Hartland v. Alaskan Airlines*,
    544 F.2d 992 (9th Cir. 1976) ......................................................................... 21, 22

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*,
    549 F.2d 1006 (5th Cir. 1977) ....................................................................... 30, 31

ii

*In re Avandia Marketing, Sales Practices & Product Liability Litigation*,
617 F. App'x 136 (3d Cir. 2015) ..................................... 17, 18, 19, 20, 21, 36, 39

*In re Baldwin–United Corp.*, (*Single Premium Deferred Annuities Ins. Litig.*),
770 F.2d 328 (2d Cir. 1985) .................................................................. 39

*In re Bos. Sci. Corp., Pelvic Repair Sys. Prods. Liab. Litig.*,
No. MDL 2326, 2019 WL 385420 (S.D.W. Va. Jan. 30, 2019) ......................... 36

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
No. CV 09-2047, 2018 WL 2095729 (E.D. La. May 7, 2018) ........................... 32

*In Re Cook IVC Filter Litigation*,
MDL No. 2570 ........................................................................... 13, 38

*In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*,
No. 1:14-ml-2570-RLY-TAB (S.D. Ind. July 10, 2015).................. 13, 14, 35, 36

*In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*,
365 F. Supp. 3d 685 (S.D.W. Va. 2019) ...................................... 17, 32

*In re Diet Drugs*,
582 F.3d 524 (3d Cir. 2009) ................................................................. 31

*In re Factor VIII or IX Concentrate Blood Prod. Litig.*,
159 F.3d 1016 (7th Cir. 1998) .................................................. 10, 12

*In re General Motors LLC Ignition Switch Litigation*,
477 F. Supp. 3d 170 (S.D.N.Y. 2020) ........................... 17, 21, 28, 29, 32, 37, 38

*In re Genetically Modified Rice Litigation*,
764 F.3d 864 (8th Cir. 2014) .................................................... 11, 12, 21

*In re Levander*,
180 F.3d 1114 (9th Cir. 1999) ............................................................. 41

*In re Prempro Prods. Liab. Litig.*,
No. 4:03-CV-1507 (BRW), 2014 WL 12758478 (E.D. Ark. Nov. 25, 2014) ..... 37

*In re Roundup Products Liability Litigation*,
544 F. Supp. 3d 950 (N.D. Cal. 2021).............. 6, 7, 15, 22, 23, 24, 33, 34, 35, 45

*In re Showa Denko K.K. L-Tryptophan Products Liability Litigation*,
953 F.2d 162 (4th Cir. 1992) ............................................................... 21

*In re Vioxx Prods. Liab. Litig.*,
760 F. Supp. 2d 640 (E.D. La. 2010) .................................................. 32

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*,
914 F.3d 623 (9th Cir. 2019) ............................................................... 31

*J. A. Jones Const. Co. v. Plumbers & Pipefitters Loc.*
598, 568 F.2d 1292 (9th Cir. 1978) ..................................................... 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ................................................................... 18, 20

*Landis v. North American Co.*,
  299 U.S. 248 (1936) ..........................................................................30

*Link v. Wabash R.R. Co.*,
  370 U.S. 626 (1962) ................................................................... 26, 28

*Manual for Complex Litigation*
  §§ 10.22, 14.215 (4th ed. 2004)......................................................30

*Morgan v. Sundance, Inc.*,
  142 S. Ct. 1708 (2022)...................................................................9, 10

*N.L.R.B. v. Local 825, Intern. Union of Operating Engineers*,
  *AFL–CIO*, 315 F.2d 695 (3rd Cir.1963)............................................16

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
  115 F.3d 644 (9th Cir. 1997) ...........................................................40

*Ready Transp., Inc. v. AAR Mfg., Inc.*,
  627 F.3d 402 (9th Cir. 2010) ...........................................................40

*Ringgold Corp. v. Worrall*,
  880 F.2d 1138 (9th Cir. 1989) .........................................................26

*S & O Liquidating P'ship v. Comm'r*,
  291 F.3d 454 (7th Cir. 2002) ..................................................... 10, 12

*S.E.C. v. McNulty*,
  137 F.3d 732 (2d Cir. 1998) .............................................................28

*Skelton v. Gen. Motors Corp.*,
  860 F.2d 250 (7th Cir. 1988) ...........................................................16

*Southern California Edison Co. v. Lynch*,
  307 F.3d 794 (9th Cir. 2002) .............................................................9

*Tanaka v. Univ. of S. Calif.*,
  252 F.3d 1059 (9th Cir. 2001) ...........................................................9

*United States v. Blodgett*,
  709 F.2d 608 (9th Cir. 1983) ...........................................................41

*United States v. Clack*,
  957 F.2d 659 (9th Cir. 1992) ...........................................................10

*United States v. Olano*,
  507 U.S. 725 (1993) .........................................................................10

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ........................................... 21, 22, 30, 31

*Weiser v. United States*,
   959 F.2d 146 (9th Cir.1992) ...................................................................9

*Welborn Clinic v. MedQuist, Inc.*,
   301 F.3d 634 (7th Cir. 2002) ...............................................................10

**Statutes**

28 U.S.C. § 1132 ...................................................................................1

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1407 ...................................................................................1

**Rules**

Fed. R. App. P. 4 ...................................................................................1

Fed. R. App. P. 32 ...............................................................................46

## STATEMENT OF SUBJECT MATTER AND APPELLATE

## JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1132 (diversity of citizenship; amount in controversy) and 28 U.S.C. § 1407 (multidistrict litigation). On May 20, 2022, the district court entered a final and appealable order denying Law Offices of Ben C. Martin and Martin Baughman, PLLC's[1] motion to reduce and exempt client recoveries from common benefit fee and expense assessments. ER-43–67. BCM[2] thereafter filed a timely notice of appeal on June 6, 2022. Fed. R. App. P. 4(a)(1); ER-168–69. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 (final decisions of district courts).

## ISSUE ON APPEAL

Does the district court have authority to require BCM to pay assessments for common benefit attorneys' fees and expenses where BCM (1) failed to object to the two orders imposing those assessments and (2) voluntarily agreed to serve as a

---

[1] The Common Benefit Fees and Costs Committee ("CBFCC") responds on behalf of all firms awarded common benefit fees and expense reimbursement. The caption utilized by Appellants does not list all such firms. The caption also erroneously designates Doris Jones as Plaintiff despite the fact that the mandate issued in her case (No. 18-16461) years ago. Likewise, C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. are erroneously captioned as Defendants-Appellees. Counsel undersigned represents all Appellees.

[2] For ease of reference and to remain consistent with the conventions used below, Law Offices of Ben C. Martin and Martin Baughman, PLLC will be collectively referred to in the singular "BCM."

1

Participating Attorney under a Participation Agreement (incorporated into a court order) that required Participating Attorneys to pay assessments on *all* cases involving Bard IVC filters handled by them?

## STATEMENT OF THE CASE

The central issue presented in this appeal is whether a district court's incorporation of a voluntary, written agreement into an order and subsequent enforcement of that court order is a proper exercise of that district court's power. Every court to consider this issue under the same circumstances found that it is.

## A. Relevant Factual History.

This appeal arises from a multidistrict litigation ("MDL") centralized in Phoenix, Arizona, before District Judge David Campbell. The underlying litigation involved product liability claims against medical device manufacturers C.R. Bard and Bard Peripheral Vascular, Inc. (collectively, "Bard") for injuries and deaths caused by several generations of Bard's retrievable inferior vena cava filters.[3] More than 8,000 cases were ultimately filed as part of the MDL. ER-43.

As is typical in centralized litigation, pretrial discovery and bellwether trial work was conducted by a number of lawyers who served on various committees

---

[3] An inferior vena cava, or "IVC," filter is a spider-like metallic device placed by physicians into a patient's inferior vena cava, the largest vein returning blood to the heart and lungs for oxygenation. The device is designed to stay lodged in place in the IVC and catch potentially fatal embolized blood clots before they can reach the cardiopulmonary system.

that advanced the litigation through the MDL process. At the outset of the MDL, the district court appointed a leadership committee comprised of lawyers around the country to perform this work. The leadership group of working lawyers became known as the Plaintiff Steering Committee ("PSC"). ER-44.

Appellant Ben Martin of the Law Offices of Ben C. Martin, his firm now known as Martin Baughman PLLC, applied to the district court for a position on the PSC and received that appointment.[4] ER-44 ("While the configuration of the PSC changed during the course of the litigation (*see* Docs. 248, 4016, 5285), Ben Martin has been a member since its inception (*see* Docs. 176 at 8, 248 at 2)."). As a member of the PSC, BCM was automatically designated and included by the district court as "Participating Counsel" under Case Management Order ("CMO") 6. ER-134–35.

As Judge Campbell explained, CMO6 "was issued early in the MDL to provide for the fair and equitable sharing among plaintiffs and their counsel of the burden of litigating this complex case." ER-44. CMO6 defined the rights and responsibilities of lawyers appointed to leadership in the MDL and set forth parameters for common benefit work to be performed, authorizations required to perform common benefit work, timekeeping standards, requirements for

---

[4] Mr. Martin's current partner, Laura Baughman, is not a PSC member, but has at all times in the MDL worked for PSC firms. ER-44 n.2.

reimbursement (current and future) of common benefit expenses, and other case management matters. ER-133–45. CMO6 also established holdback percentages of six percent for attorneys' fees and two percent for expenses from claimants' monetary recoveries. ER-142. CMO6 was later amended to increase the fees assessment from six to eight percent, for a total assessment of ten percent of the recovery. ER-132.

BCM did not object to either version of CMO6.[5] Instead, BCM applied for, and was awarded, funds for work as Participating Counsel. ER-65 n.13 ("BCM's argument to exempt its state court cases 'does not smack of fairness or equity' given that BCM itself has been awarded common benefit funds for its work on state-court cases.") (citing Doc. 22149 at 8 n.6).

As Participating Counsel, BCM agreed to the terms of the Participation Agreement. ER-134–35. The district court defined the agreement as a voluntary, private agreement, "between and among plaintiffs' attorneys who have cases

_____

[5] Other Participating Counsel lodged objections to ACMO6, but BCM did not join them. *See e.g.*, ER-130–31 ("Nearly 2,000 of the cases settled in principle by execution of a settlement term sheet have been brought by the law firms of Freese & Goss and Matthews & Associates. Doc. 17367 at 1. Counsel from these settling law firms and Defendants have represented that another 2,000 or so cases are near settlement. The settling law firms argue that they relied on the 6% attorneys' fees assessment in negotiating the settlements, and that it would be unfair to increase the assessment at this late date. Docs. 17367 at 2–3, 17404 at 2. Other law firms with cases in this MDL have joined these arguments. Docs. 17367, 17387-17403, 17433, 17555.").

pending in the MDL and/or in state court." ER-134.  Under the Participation

Agreement, an attorney "is entitled to receive the Common Benefit Work Product

created by those attorneys who have also executed, or have been deemed to have

executed the Participation Agreement and Joint Prosecution Agreement, regardless

of the venue in which the attorney's cases are pending."  ER-147.

As Judge Campbell noted, the common benefit work generated in the MDL

is substantial.  It "includes millions of pages of reviewed documents, substantial

ESI discovery, scores of depositions (including trial preservation depositions after

the MDL closed), and numerous experts retained and developed by the MDL's

lead counsel."  ER-48.

After more than five years of litigation, including three bellwether cases

tried to a verdict, Bard began settling a significant number of cases.  In 2021,

consistent with the procedure set out in CMO6 and ACMO6, Judge Campbell

approved the distribution of fees and costs from the amounts held back from

recoveries in settled cases and jury verdicts in favor of claimants.  As noted above,

BCM applied for and received a share of that distribution.  BCM continues to

receive distributions from these holdbacks.

After the conclusion of the MDL, BCM continued to litigate a number of its

cases, some of which were remanded.  Others were filed in other jurisdictions.  To

engage in this litigation and trial effort, BCM extensively used the common benefit

work product it and the PSC generated, accessing the trial package more than

5,000 times.  ER-49–50 (detailing BCM's use of and benefit from MDL work

product).

## B.    Relevant Procedural History.

Despite BCM's receipt of common benefit fees and expense reimbursement

under the Participation Agreement and substantial and regular use of MDL work

product, when BCM reached a settlement of all of its Bard IVC filter-related cases

and claims in November 2021, it filed a motion to exempt assessments from Bard

IVC filter cases it settled that were (1) filed in district courts after the MDL was

concluded, (2) filed in state courts, or (3) never filed before settlement.[6]  ER-110–

11.  BCM originally challenged the district court's authority based on Judge

Chhabria's decision in *In re Roundup Products Liability Litigation*, 544 F. Supp.

3d 950 (N.D. Cal. 2021), *dismissed*, No. 21-16228, 2022 WL 16646693 (9th Cir.

Nov. 3, 2022), and equitable considerations.  ER-116–20.  It also sought to modify

---

[6] Appellees emphasize that BCM represents that it has settled *all* of its Bard IVC
filter cases, and that the amount of fees and costs at issue in this appeal, and the
number of individual settlements implicated, are known.  *See* Opening Br. p. 8.
These facts distinguish this case from *In re Roundup Products Liability Litigation*,
No. 21-16228, 2022 WL 16646693 (9th Cir. Nov. 3, 2022), where this Court
dismissed an appeal of the district court's order concerning the distribution of
certain common benefit fees and costs, because the district court "contemplated
continued fee litigation as it left unanswered the value of common benefit work,
lead counsel's entitlement to common benefit fees, and the amount of the total fee
award."  2022 WL 16646693, at *1.

and reduce assessments that BCM would be required to pay for the cases that had been pending in the MDL.  ER-111, 118–20.

The district court, in a twenty-five-page decision, denied BCM's motion in all respects.  ER-43–67.  Judge Campbell first distinguished the *Roundup* decision on no fewer than seven grounds.  ER-47–51.  The court then identified multiple sources of authority for its ability to order assessments from recoveries in BCM's cases, including the MDL statute (28 U.S.C. § 1407), the court's inherent powers, and the common fund doctrine.  ER-52–64.  The district court also held that the PSC and other participating attorneys possessed legitimate reliance interests in the agreement that they entered into and to which all firms other than BCM continued to agree to be bound.  ER-64–65.  BCM timely appealed.  ER-168.

On appeal, BCM abandoned its equitable arguments and no longer seeks to challenge assessments on the cases filed in or transferred to the MDL.  Rather, BCM states that "the sole question presented is whether, based on the Participation Agreement and/or some other source of authority, the district court had the power to order attorneys' fees and costs holdback assessments against cases never filed in any court, cases filed in federal court after the MDL proceeding concluded, and cases filed in state court in which BCM served as claimants' counsel."  Opening Br. p. 7.

## SUMMARY OF THE ARGUMENT

BCM has waived (twice) its ability to object to paying assessments on settled cases that benefited from the common benefit work performed over the course of five years in a multidistrict litigation BCM helped litigate (and is compensated for from a fund created by Participating Counsel's case assessments). Even if it did not waive the issue, BCM voluntarily submitted to the district court's jurisdiction over assessments for common benefit fees and costs through participation in an agreement, and bound its clients to that agreement, in exchange for use of work product developed in the MDL and under the supervision of the district court. Finally, it is well-established and long-settled that a district judge presiding over an MDL has multiple sources of authority to approve assessments on participating attorneys' cases to ensure orderly conduct of the litigation and compensate those attorneys who risk millions of dollars in expenses and tens of millions of dollars in time to advance litigation for the benefit of thousands of claimants.

## ARGUMENT

### A.  Standard Of Review.

Whereas questions of law are reviewed *de novo*, a district court's exercise of its inherent powers is reviewed under an abuse of discretion standard.  *See, e.g.*, *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022)

8

(reviewing a question of subject matter jurisdiction *de novo*); *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (reviewing a district court's dismissal for lack of personal jurisdiction *de novo*); *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1087 (9th Cir. 2021) (reviewing a district court's imposition of sanctions under its inherent powers for abuse of discretion); *Southern California Edison Co. v. Lynch*, 307 F.3d 794, 807 (9th Cir. 2002) (reviewing a district court's discretionary denial of permissive intervention for abuse of discretion).

## B. BCM Waived Any Argument That It Is Not Bound By The Participation Agreement Or Amended CMO6.

As a threshold matter, this Court need not reach the issue raised by BCM in this appeal because BCM did not timely object to the relevant orders. *See generally Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1199 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010) ("Rights may, of course, be waived or forfeited, if not raised in a timely fashion."); *Tanaka v. Univ. of S. Calif.*, 252 F.3d 1059, 1062 (9th Cir. 2001) ("Of course, '[o]ur review is not limited to a consideration of the grounds upon which the district court decided the issues; we can affirm the district court on any grounds supported by the record.'") (quoting *Weiser v. United States*, 959 F.2d 146, 147 (9th Cir.1992)).

Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (quoting *United States v.*

*Olano*, 507 U.S. 725, 733 (1993)).  In general, when deciding whether a waiver has

occurred, federal courts focus "on the actions of the person who held the right."

*Morgan*, 142 S. Ct. at 1713.  Failing to object to an order or agreement and,

instead, acting in conformity therewith, supports a finding of waiver.  *See, e.g.*,

*United States v. Clack*, 957 F.2d 659, 661 (9th Cir. 1992) ("Objections to

restitution that are not raised in the district court are usually deemed waived.");

*S & O Liquidating P'ship v. Comm'r*, 291 F.3d 454, 458–59 (7th Cir. 2002)

("[A]lthough the Beach group opposed the entry of a final order allowing the

Spicer partners to participate in the settlement, . . . by its own actions, the group

manifested an intent to proceed with the settlement and adhere to its requirements.

The group waived any objections to the Tax Court's ruling on the inclusion of the

Spicer partners and, therefore, mooted the underlying controversy."); *Welborn*

*Clinic v. MedQuist, Inc*., 301 F.3d 634, 637 (7th Cir. 2002) ("Like any other

contractual right, the right to arbitrate a claim may be waived.  We will find waiver

when 'based on all the circumstances, the party against whom the waiver is to be

enforced has acted inconsistently with the right to arbitrate.'") (quoting *Grumhaus*

*v. Comerica Sec., Inc*., 223 F.3d 648, 650–51 (7th Cir.2000)); *In re Factor VIII or*

*IX Concentrate Blood Prod. Litig*., 159 F.3d 1016, 1020 (7th Cir. 1998) ("Having

participated in the settlement proceeding and having failed to make timely

objection to it, they are barred by the principles of waiver and equitable estoppel

from challenging the settlement after it has become final and the defendants have paid and the class members have received hundreds of millions of dollars.").

In *In re Genetically Modified Rice Litigation*, 764 F.3d 864 (8th Cir. 2014), the court found waiver had occurred in circumstances very similar to the facts here. 764 F.3d at 870. In that case, upon which BCM relies while ignoring its holding on waiver, the district court's order established a common benefit fund for the MDL and required the appellant, Phipps, to contribute to it. *Id.* Lead counsel contended that Phipps had no standing to challenge the district court's order because Phipps had agreed to be bound by a settlement agreement that required contribution to the common benefit fund. *Id.* Phipps argued that it had standing because it contested the creation of the common benefit fund throughout the litigation. *Id.* In considering this "threshold challenge" to the appeal, the Eighth Circuit advised that the issue "is better described as one of waiver and estoppel than of standing." *Id.* The court pointed to the terms of the MDL settlement agreement, which stated, "by submitting an Enrollment and Claims Package, Enrolling Counsel and each Eligible Claimant . . . agree[d] to be bound by all of the terms and conditions of [the] Agreement." *Id.* at 867, 870. The court held that "even though Phipps was not a party to the underlying lawsuit or the settlement agreement," the "agreement is effective based on Phipps's conduct of submitting claims pursuant to the Agreement." *Id.* at 870.

11

Notably, the court acknowledged that Phipps had objected early on to the establishment of the common benefit fund and the requirement that he contribute; however, "Phipps did not attempt to memorialize those objections in the Settlement Agreement." *Id.* at 871. The court reasoned that Phipps should not have stipulated in the settlement agreement that payments would be allocated in accordance with the court's order establishing the common benefit fund "without attempting to reserve allegedly unresolved issues." *Id.* Therefore, the Eighth Circuit concluded that "Phipps waived its challenge to the creation of the Fund and to the order that Phipps and its clients must contribute to the Fund," pursuant to terms of the settlement agreement that Phipps agreed to be bound. *Id.* (citing *S & O Liquidating P'ship*, 291 F.3d at 459; *In re Factor VIII or IX Concentrate*, 159 F.3d at 1020).

Similar to *In re Genetically Modified Rice Litigation*, BCM waived its right to challenge the requirement that it pay common benefit assessments from the recoveries in its non-MDL cases. The facts here even more strongly evince waiver. BCM was in leadership of the MDL and never objected to being included as Participating Counsel. Ben Martin has been a member of the PSC since the outset of the MDL in 2015. *See* ER-44. CMO6 provided that all members of the PSC would be automatically included as "Participating Counsel" under the Participation Agreement, and BCM never raised any objections. ER-134–35. As a

PSC member, Mr. Martin was deemed bound by the Participation Agreement attached to CMO6, which stated that "Participating Counsel agrees that all cases in which Participating Counsel has a fee interest, including unfiled cases, tolled cases, and/or cases filed in state and/or federal court, are subject to the terms of this Participation Agreement." ER-147. If BCM did not want to pay the assessments it now challenges, it needed to timely object to CMO6. It did not.

CMO6 was later amended to increase the attorneys' fees assessment from six percent to eight percent (keeping the expenses assessment the same at two percent). ER-132. Again, BCM made no objection.

Furthermore, Mr. Martin was appointed to the PSC partly because of his long experience in IVC filter cases. He was one of the "consortium attorneys" eligible to be reimbursed for certain efforts performed before the MDL was created. ER-137; ER-161 (including Ben Martin as Consortium Counsel). He also was (and is) co-Lead Counsel in the similar *In Re Cook IVC Filter Litigation*, MDL No. 2570, centralized in the Southern District of Indiana. *See* Case Management Order 9 at 7, *In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:14-ml-2570-RLY-TAB (S.D. Ind. July 10, 2015), ECF No. 519 (listing Mr. Martin as Lead Co-Counsel for Plaintiffs).

In *In Re Cook*, Mr. Martin submitted and the district court adopted a CMO nearly identical to CMO6 here, including a (nearly identical) Participation

Agreement that counsel must sign in order to access common benefit work and be eligible to receive common benefit fees and expense reimbursement. *Compare* ER-134 ("Exhibits A and B, attached hereto and incorporated herein, are voluntary agreements between and among plaintiffs' attorneys who have cases pending in the MDL and/or in state court. Said agreements are private and cooperative agreements between and among plaintiffs' attorneys only ('Participating Counsel'); and not Defendants or Defendants' counsel."), *and* ER-142 ("The assessment shall apply to all of the cases of the plaintiffs' attorneys who are subject to this Order, whether as sole counsel or co-counsel, including cases pending in the MDL, pending in state court, unfiled, or tolled."), *with* Order Amending Rules, Policies, Guidelines Relating to Establishing Common Benefit Fee and Expense Fund at 4, 13, *In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:14-ml-2570-RLY-TAB (S.D. Ind. Sept. 21, 2020), ECF No. 14361 ("Exhibits A and B, attached hereto and incorporated herein, are voluntary agreements between and among plaintiffs' attorneys who have cases pending in the MDL and/or in state court. Said agreements are private and cooperative agreements between and among plaintiffs' attorneys only, and not Defendants or Defendants' counsel. . . . The assessment shall apply to all of the cases of the plaintiffs' attorneys who are subject to this Order, whether as sole counsel or co-counsel, including cases pending in the MDL, pending in state court,

unfiled, or tolled.").  There can be no doubt that BCM's waiver of its right to object to CMO6 and ACMO6 was *knowing*.

In sum, BCM was well aware of the requirement that Participating Counsel pay common benefit assessments on non-MDL cases, never made any objections to CMO6, ACMO6, or being bound by the Participation Agreement, and knowingly proceeded to use common benefit work.  Therefore, BCM waived its right to contest CMO6 and ACMO6 in any form, disposing of this appeal.  The Court need go no further.

## C.  BCM Is Bound By The Participation Agreement And *In Re Roundup* Does Not Apply.

BCM's attempt to avoid its obligations under the case management orders largely rests on Judge Chhabria's order in *In re Roundup Products Liability Litigation*, 544 F. Supp. 3d 950 (N.D. Cal. 2021), *dismissed*, No. 21-16228, 2022 WL 16646693 (9th Cir. Nov. 3, 2022).  There are two problems with this argument.  First, Judge Chhabria's academic discussion about whether a district court judge had authority to assess cases not before it was dictum because he ultimately decided that even if a court had such jurisdiction, he would decline to use it based on the unique set of circumstances in the cases before him.  544 F. Supp. 3d at 968.  Second, even were *In re Roundup* not dicta on this issue, it is wholly irrelevant in this case because BCM has *voluntarily submitted* (for itself and on behalf of its clients) to the jurisdiction of the Court by virtue of the

Participation Agreement. As the Agreement itself declares and CMO6 recognizes, Participating Counsel reached a private agreement in which they (and their clients) agree to pay assessments on all their cases in exchange for use of MDL work product and, in the case of leadership members like BCM, becoming eligible to be paid for common benefit work and reimbursed for common benefit expenses.[7] ER-134–35, 146–47.

There is no question that BCM submitted to the Court's jurisdiction. Parties can (and regularly do) agree to submit to a court's jurisdiction through private

---

[7] BCM also makes note that neither side has been able to locate Mr. Martin's physical signature on the Participation Agreement. Opening Br. p. 7. This is a red herring. First, BCM does not contend that Mr. Martin did not sign the Participation Agreement. Second, even if a party does not sign a contract, the party's conduct may bind it to the agreement. A party named in a contract who acts in accordance with its provisions and accepts benefits of that contract becomes bound by that agreement regardless of whether the party signed it. *J. A. Jones Const. Co. v. Plumbers & Pipefitters Loc*. 598, 568 F.2d 1292, 1294–95 (9th Cir. 1978) ("[F]ailure of one of the parties to sign the agreement does not necessarily prevent the nonsigning party from being bound by the agreement."). In other words, "[t]hat [a party] failed to sign the agreement is immaterial for any written contract though signed only by one of the parties binds the other if he accepts it and both act in reliance on it as a valid contract." *Id.* at 1295 (quoting *N.L.R.B. v. Local 825, Intern. Union of Operating Engineers, AFL–CIO*, 315 F.2d 695, 699 (3rd Cir.1963) ("Conduct which imports acceptance is acceptance or assent, in the view of the law, whatever may have been the actual state of mind of the party.")). Further, BCM cannot have it both ways—it cannot accept the benefits of the Participation Agreement by receiving common benefit funds and avoid the burden of agreeing to contribute. *See, e.g.*, *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 260 (7th Cir. 1988) ("We will not allow Moore to have it both ways. He cannot accept the benefits of the Settlement Agreement and avoid the burden of agreeing not to appeal.").

agreement. *Custom Polymers PET, LLC v. Gamma Meccanica SpA*, 185 F. Supp. 3d 741, 760 (D.S.C. 2016) ("Through this provision, Custom submitted to the jurisdiction of this Court[.]"); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 617 F. App'x 136, 142 (3d Cir. 2015) (finding that a participation agreement and the court's responsibility to supervise and appoint leadership/coordinating counsel was sufficient for a court to exercise jurisdiction); *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 187–92 (S.D.N.Y. 2020) (affirming the same); *In re Cook Med., Inc., Pelvic Repair Sys. Products Liab. Litig.*, 365 F. Supp. 3d 685, 695 (S.D.W. Va. 2019) ("The source of the court's authority is in its discretion to manage the litigation in combination with the voluntarily entered into agreement."). Thus, determining the extent of a court's authority to impose assessments on parties not before it is merely an advisory exercise where, as here, lawyers voluntarily submitted themselves and their clients to the court's jurisdiction.

The court was well within its discretion to impose assessments, including on all cases for which Participating Counsel used MDL work product. BCM's attempt to frame the issue as one of personal jurisdiction is misplaced. *See* Opening Br. p. 17–18. At issue here is a law firm's agreement that, in exchange for unfettered access to MDL materials and the ability to be paid for its work in the MDL, it would pay court-ordered assessments on all of its cases' recoveries,

regardless of when, where, or whether they were filed. ER-147–48, 166. The terms of this agreement were incorporated into CMO6 and later ACMO6. ER-134. Thus, the district court simply enforced the terms of a deal it sanctioned and memorialized.[8] And when a district court incorporates the terms of an agreement into one of the court's orders, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *In re Avandia Mktg.*, 617 F. App'x at 142.

Pursuant to the Participation Agreement here, an attorney was entitled to receive and use common benefit work as long as the attorney agreed to pay common benefit assessments from the gross recoveries obtained in *all* cases benefitting from common benefit work, specifically including "all un-filed cases, tolled cases, and/or cases filed in state court in which [Participating Counsel] have a fee interest[.]" ER-149. This commitment was frequently repeated throughout the Participation Agreement and the Joint Prosecution Agreement. *See* ER-142

---

[8] The two self-serving hypotheticals BCM cites on pages 17 and 18 of its Opening Brief are unhelpful. It may be that in those narrowly crafted situations, the court might not be able to exercise personal jurisdiction over BCM or the hypothetical litigants. But if, in either situation, the hypothetical BCM had agreed to pay and have its clients pay for work product generated in the MDL, was party to that agreement in the MDL, and had the agreement incorporated into a court order in the MDL, then the MDL district judge would undoubtedly have jurisdiction to enforce the terms of the district court's order if BCM or its clients reneged on the agreement.

("The assessment shall apply to all of the cases of the plaintiffs' attorneys who are subject to this Order, whether as sole counsel or co-counsel, including cases pending in the MDL, pending in state court, unfiled, or tolled."); ER-147 ("Participating Counsel agrees that all cases in which Participating Counsel has a fee interest, including unfiled cases, tolled cases, and/or cases filed in state and/or federal court, are subject to the terms of this Participation Agreement."); ER-166 ("The Undersigned Member Attorney agrees to honor any common benefit holdback or assessment from settlement or judgement proceeds in any Bard IVC Filter case they have an interest in, which has been or may be ordered by Judge David G. Campbell in the United States District Court for the District of Arizona.").

BCM's further attempts to frame the question presented as being at the heart of a "circuit split," Opening Br. p. 18, rely upon a mischaracterization of the decisions it describes. In fact, when a valid participation agreement between the parties is incorporated into an MDL court's pretrial order, courts have consistently upheld a court's authority to enforce the agreement. The cases that BCM point to as evidence of a "split" did not involve such agreements and their incorporation into a court order.

For example, in *In re Avandia Marketing, Sales Practices & Product Liability Litigation*, 617 F. App'x 136 (3d Cir. 2015), a law firm and the MDL's

19

plaintiffs' steering committee entered into a written participation agreement under which the law firm agreed to pay seven percent of the recovery on its clients' claims into a common benefit fund in exchange for being able to use the steering committee's work product. 617 F. App'x at 138. The district court then incorporated the agreement by reference into a common benefit fund order that—analogous to CMO6 and the Participation Agreement here—mandated an assessment on "'all Avandia claims, regardless of whether those claims are subject to the jurisdiction of the MDL, tolled, unfiled, or filed in another jurisdiction' if, among other things, the attorney 'signed on to the Participation Agreement'[.]" *Id.* at 139 (alterations omitted).

After the law firm reached a global settlement, it argued that its state-court cases should not be subject to assessment. *Id.* The court rejected the firm's argument on the ground that the district court's order bound the firm. *Id.* at 142 (citing *Kokkonen*, 511 U.S. at 381). Because the district court incorporated the steering committee's agreement with the law firm into its own order, a breach of the agreement was also a violation of the court's order. *In re Avandia*, 617 F. App'x at 142. Therefore, the district court had jurisdiction to remedy that breach. *Id.* The Third Circuit adopted the same reasoning under substantially similar circumstances in *In re Avandia Mktg. Sales Pracs.*, 658 F. App'x 29, 36 (3d Cir. 2016).

The Southern District of New York also reached the same conclusion in *In re General Motors LLC Ignition Switch Litigation*, 477 F. Supp. 3d 170 (S.D.N.Y. 2020). There, plaintiffs' counsel had similarly entered into a participation agreement with the lead counsel of an MDL, "in which they expressly authorized [defendant] to hold back a portion of recoveries in their 'Common Benefit Actions' in exchange for access to Common Benefit Work Product." 477 F. Supp. 3d at 191. The agreement, incorporated by reference into the court's order, defined "Common Benefit Actions" to include unfiled claims. *Id.* at 192. The court thus held that the district court had "jurisdiction and authority" to adjudicate whether plaintiffs' counsel breached the "Attorney Participation Agreement" and thereby violated the district court's order. *Id.* (quoting *In re Avandia Mktg.*, 617 F. App'x at 143–44).

In contrast, none of the cases BCM relies upon—*In re Genetically Modified Rice Litigation*, 764 F.3d 864 (8th Cir. 2014); *In re Showa Denko K.K. L-Tryptophan Products Liability Litigation*, 953 F.2d 162 (4th Cir. 1992); *Hartland v. Alaskan Airlines*, 544 F.2d 992 (9th Cir. 1976); and *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977)—involve the parties having entered into an agreement to pay an assessment in exchange for common benefit work product that was subsequently incorporated into a court order.

21

BCM conceded that neither *Hartland* nor *Vincent* "involved either counsel who represented clients both within and outside of an MDL proceeding, nor did counsel in those earlier cases sign anything resembling a participation agreement pertaining to cases outside of an MDL proceeding." Opening Br. p. 22–23. Significantly, in *Hartland*, fee assessments were imposed on settlements in which the lawyers never even used common benefit work, 544 F.2d at 995–96, and in *Vincent*, assessments were imposed on claimants who settled even before the appointment of lead counsel, 557 F.2d at 766–67.

Therefore, given the critically different factual circumstances present here, BCM's reliance on these four decisions is unavailing. The central division between the circuits' opinions is not whether the court employed a "claimant-centric" versus "attorney-centric" approach, Opening Br. p. 22, but whether the district court's exercise of authority was proper *based on the circumstances*, particularly whether the objecting party signed a participation agreement governing the use of MDL work product.

BCM's analysis of Judge Chhabria's discussion of *Hartland* and *Vincent* in *In re Roundup* is equally misguided. *See* Opening Br. p. 23–24. Judge Chhabria stated that regardless of "whether the people who won their appeals in *Hartland* and *Vincent* had hired lawyers who also happened to represent clients in the MDL[,] . . . there is no reason to think that the presence of so tenuous a connection

between those nonparties and the MDL proceedings would have changed the Ninth

Circuit's views about the" district court's lack of authority. *In re Roundup*, 544 F.

Supp. 3d at 964.

The "tenuous connection" Judge Chhabria referred to was a non-MDL

plaintiff having a lawyer who was simultaneously involved in an MDL, *not* that an

MDL plaintiff's lawyer signed an agreement to contribute, in exchange for

common benefit work product, assessments from all cases, including state court

and unfiled claims, that was incorporated into an order of the district court

supervising the MDL. In the latter instance, the agreement is expressly binding on

the parties and, if violated, may be enforced by the district court.

As Judge Campbell noted below, the facts of *Roundup* are readily

distinguishable from the facts in *In re Bard IVC Filters*. ER-47–51. For example,

the attorneys in *Roundup* who objected to the proposed assessments never agreed

to contribute cost or fee holdbacks to a common benefit fund. Rather, plaintiffs'

lead counsel requested an order requiring holdbacks from any person who

recovered money from the defendant, "regardless of whether their lawyer was

involved in the MDL or used MDL work product." *In re Roundup*, 544 F. Supp.

3d at 952, 957. In fact, counsel who opposed such proposed assessments in

*Roundup* recognized that "[t]he situation might well be different if (1) [they] had

voluntarily entered into a participation agreement with Co-Lead Counsel and (2)

23

that agreement was incorporated into an order of this Court," which is precisely the situation here. *See* Opposition to Motion to Amend Pre-Trial Order 12: Common Benefit Fund Order to Establish a Holdback Percentage at 5, *In re Roundup Prod. Liab. Litig.*, No. 3:16-md-02741-VC (N.D. Cal. Feb. 4, 2021), ECF No. 12517. BCM's proposed framing of the question as "claimant-centric" or "attorney-centric" does not fit the facts here, where BCM has entered into an agreement on behalf of its clients, and the agreement is incorporated into a court order.

There may be situations where a district court presiding over an MDL lacks the authority to order holdbacks from certain non-MDL claimants. This is not one of them. Because BCM entered into the Participation Agreement, binding itself and all its Bard IVC filter clients to contribute common benefit fund assessments, and this agreement was incorporated into an order of the district court, the district court had authority to enforce its own order requiring holdbacks on BCM's and its clients' recoveries.

### D. BCM Has The Authority To Bind Its Clients.

BCM attempts to sidestep the fact of being bound by the Participation Agreement incorporated into CMO6, in part, by arguing that its clients are not party to the Participation Agreement. Opening Br. p. 15–16. While true, it is also irrelevant. It is well-settled that a lawyer can bind his or her clients to an agreement. *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978)

(recognizing the power of attorneys to bind their clients to agreements); *George Nicolais & Associates, Inc. v. Acquvest, Inc*., 322 Fed. App'x. 519, 520 (9th Cir. 2009) (holding that an executed engagement letter between plaintiffs and defendants' retained counsel was binding upon the defendants).

Nowhere in BCM's Opening Brief does it address this well-established principle that the acts of attorneys may properly bind their clients. BCM, as party to the Participation Agreement, is clearly bound to pay assessments from its fees pursuant to CMO6 and ACMO6. Likewise, BCM's clients all benefited from MDL work product and BCM's agreement to pay assessments is binding on them.

The attorney is the client's agent. *See Am. Fam. Mut. Ins. Co. v. Zavala*, 302 F. Supp. 2d 1108, 1121 (D. Ariz. 2003) (holding that because "an attorney is the agent of a client," an attorney acting for the client could not tortiously interfere with the client's own contract). While the "general authority arising out of an attorney's retainer does not Ipso facto cloak him with implied or inherent authority to settle or compromise claims on behalf of his client[,]" when the client "places the attorney in a position where third persons of ordinary prudence and discretion would be justified in assuming the attorney was acting within his authority, then the client is bound by the acts of the attorney within the scope of his apparent authority." *Arizona Title Ins. & Tr. Co. v. Pace*, 445 P.2d 471, 473–74 (Ariz. Ct. App. 1968) (holding that the appellant is bound by the acts of the appellant's

attorney entering into a settlement agreement, in part based on the appellant's attorney having actively participated in the litigation) (citations omitted); *see also Zavala*, 302 F. Supp. 2d at 1116 ("It would be highly impractical, and clearly detrimental to our legal system, to hold that a lawyer's actions are authorized and binding only if the client consents to every single action taken by the lawyer. Lawyers are entrusted with considerable discretion in representing their clients in the complex world of legal rights and obligations. Clients rely on the training, expertise and judgment of their lawyers.").

Importantly, clients are also "considered to have notice of all facts known to their lawyer-agent." *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141–42 (9th Cir. 1989) (finding that appellants could not claim lack of knowledge of the trial date despite no longer having counsel, because the trial date was set in an order filed many months before their counsel had withdrawn); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) ("[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'") (citation omitted).

Here, BCM's clients outside the MDL can be assumed to have notice of the recovery assessments ordered in CMO6 and ACMO6. As Participating Counsel, BCM was bound by the terms of the Participation Agreement, which provides that its clients' recoveries in non-MDL cases are subject to a cost assessment. *See, e.g.*,

ER-147. BCM voluntarily chose to become Participating Counsel so that it could benefit from common fund work product in the prosecution of its clients' claims and be paid via assessments for common benefit work. It is reasonable to conclude that BCM's clients relied on BCM's judgment and empowered him to incur expenses for representation-related services on their behalf.

As the district court explained, "[e]thical rules required BCM to advise their clients of the terms of their fee arrangements – which would include the common benefit fund assessments established by the Court and to which BCM had agreed – and to include those terms in their written agreements." ER-57 (discussing Arizona, Texas, and ABA Model Rules of professional conduct requirements for disclosure of contingent fees and expense deductions). BCM does not dispute the district court's characterization of its ethical responsibilities, and, notably, none of BCM's clients have come forward to suggest that the CMO6 and ACMO6 expense assessments were not properly disclosed to them.[9] If BCM's clients did not want to be bound by the Participation Agreement, they would bear the burden of demonstrating that BCM acted without authority. *See Anand v. California Dep't of Developmental Servs.*, 626 F. Supp. 2d 1061, 1067 (E.D. Cal. 2009) ("[P]laintiff must bear the burden to show that her previous attorney did not have her authority

---

[9] Also absent from the record is any indication of whether, under BCM's engagement agreements with its clients, BCM or its clients are responsible for paying expenses, including assessments.

to settle her claims[.]"); *see also Link*, 370 U.S. 626, 634 n.10 (1962) (reasoning that "if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice").  They have not done so.

The court upheld similar assessments in *In re General Motors LLC Ignition Switch Litigation*, 477 F. Supp. 3d 170 (S.D.N.Y. 2020).  Because the law firms in that case had entered into a participation agreement with the lead counsel of an MDL, "in which they expressly authorized [defendant] to hold back a portion of recoveries in their 'Common Benefit Actions' in exchange for access to Common Benefit Work Product," the court found that the agreement was binding on both the firms and their clients with unfiled claims.  477 F. Supp. 3d at 191–92 (citing *S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) ("Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade 'the consequences of the acts or omissions of his freely selected agent' 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.'") (alteration omitted) (quoting *Link*, 370 U.S. at 633–34)).  The court rejected the argument "that assessments should not be imposed on [the firms'] unfiled claims because their 'clients deserved to know, certainly while settlements were being negotiated, whether their cases were assessable,'" and asserted that "[i]f the Firms' clients did not know that their

28

prospective settlements would be assessable, that is on the Firms – not the Court." *In re Gen. Motors*, 477 F. Supp. 3d at 182 (citation omitted).

In short, because BCM's clients are bound through its acts to the terms of the Participation Agreement, the district court's order of cost holdbacks may properly be enforced against BCM's non-MDL claimants' recoveries.

**E.     The District Court's Authority To Assess Recoveries On Cases Not Before It Arises From Its Inherent Power To Manage The MDL, The MDL Statute, And The Common Fund Doctrine.**

Finally, while BCM's failure to object to the governing orders and voluntarily agreeing to the terms of the Participation Agreement in exchange for use of MDL work product and receipt of compensation for MDL work performed end the analysis in this appeal, for the sake of completeness, Appellees address BCM's argument that the district court simply lacked the authority to impose assessments on cases that BCM kept out of the MDL.  *See* Opening Br. p. 25–33. Because the district court's right to levy assessments against cases outside of the MDL derives from *separate* sources of authority—inherent power, the MDL statute, and the common fund doctrine—those sources must be read in conjunction with each other.

Every trial court has "managerial power," meaning "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North American*

*Co.*, 299 U.S. 248, 254 (1936) (recognizing that a district court has the inherent power to stay one case even pending the outcome of another case with different parties); *see also In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1012 (5th Cir. 1977) ("Managerial power is not merely desirable. It is a critical necessity.").

Furthermore, under 28 U.S.C. § 1407 (the MDL statute), a district court that supervises a multidistrict litigation is specifically granted the authority to conduct coordinated or consolidated pretrial proceedings. 28 U.S.C. § 1407.

Pursuant to every trial court's inherent managerial power and bolstered by the MDL statute, a district court supervising a multidistrict litigation may appoint lead counsel to assist in case management and organization. *See Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 774 (9th Cir. 1977) (holding that the district court supervising the MDL properly exercised its authority to appoint a committee of lead counsel); *Manual for Complex Litigation* §§ 10.22, 14.215 (4th ed. 2004) (noting the need for courts to appoint counsel to act on behalf of other counsel, and the need to "define designated counsel's functions, determine the method of compensation, specify the records to be kept, and establish the arrangements for their compensation, including setting up a fund to which designated parties should contribute in specified proportions"); *see also In re Volkswagen "Clean Diesel"*

*Mktg., Sales Pracs., and Prods. Liab. Litig.*, 914 F.3d 623, 643–44 (9th Cir. 2019) (discussing MDL courts' authority to enter pretrial case management orders).

In addition, pursuant to the common fund doctrine, attorneys whose work creates a common fund for the benefit of a group of plaintiffs are entitled to compensation for their efforts. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.") (citations omitted). As the Supreme Court has explained, the common-fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund[.]" *Id.* (citation omitted).

Courts throughout the country have consistently recognized that a district court supervising an MDL can create a common benefit fund and make assessments for that fund. *See Vincent*, 557 F.2d at 769; *In re Diet Drugs*, 582 F.3d 524, 546–47 (3d Cir. 2009); *In re Air Crash Disaster*, 549 F.2d at 1017, 1019–21 ("The power of the court to order compensation, and payment of it in the manner directed in this case, is reinforced by the body of law concerning the

31

inherent equitable power of a trial court to allow counsel fees and litigation expenses out of the proceeds of a fund that has been created, increased or protected by successful litigation."); *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d. 170, 189 (S.D.N.Y. 2020) ("[I]t is well established that federal courts also possess certain inherent powers, 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases,' and 'to protect their proceedings and judgments.'") (citations omitted); *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 365 F. Supp. 3d 685, 695 (S.D.W. Va. 2019) ("A separate source of authority for MDL courts to assess attorneys' fees in common benefit fund cases comes from the 'inherent 'managerial' power over the consolidated litigation.'") (citation omitted); *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 648 (E.D. La. 2010) ("In addition to judicial precedent the Court also finds authority to assess common benefit attorneys' fees in its inherent managerial authority, particularly in light of the complex nature of this MDL."); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. CV 09-2047, 2018 WL 2095729, at *6 (E.D. La. May 7, 2018) ("It is well-settled that 'an MDL court's authority to order contributions to compensate leadership counsel derives from its 'managerial' power over the consolidated litigation, and, to some extent, from its inherent equitable power.'") (alterations omitted) (citation omitted).

"BCM does not dispute that MDL courts have the power to impose attorneys' fees and costs holdback assessments to compensate for work performed for the common benefit in cases that were a part of the MDL proceeding." Opening Br. p. 13.  BCM further concedes that "the district court possessed authority over BCM in its role as counsel in the cases in which BCM was representing claimants with cases in the MDL proceeding," which was "sufficient to empower the district court to order common benefit attorneys' fees holdbacks from BCM's share of counsel fees in cases in which BCM represented claimants in the MDL proceeding."  Opening Br. p. 16.

The question, then, is whether the district court's authority allowed it to assess cases handled by attorneys who used and directly benefitted from MDL work and agreed to pay for that work in the form of assessments without actually being filed in the MDL.  BCM inappropriately relies on Judge Chhabria's conclusion in *Roundup* that "[n]either the common fund doctrine nor the district court's inherent power to control its docket justifies an order affecting the recovery of a nonparty merely because they happened to hire a lawyer with a client in the MDL."  Opening Br. p. 26; *In re Roundup Prod. Liab. Litig.*, 544 F. Supp. 3d 950, 963 (N.D. Cal. 2021), *dismissed*, No. 21-16228, 2022 WL 16646693 (9th Cir. Nov. 3, 2022).

Here, BCM's clients outside of the MDL did not just hire a lawyer who happened to have a client in the MDL.  Instead, they hired BCM, a member of the PSC and an attorney who bound its clients to the Participation Agreement in exchange for securing access to MDL work product (which handsomely benefitted BCM and its clients).  As Judge Campbell explained, in contrast to the very broad assessments proposed by leadership in *Roundup*, which would apply to attorneys who were total strangers to the *Roundup* MDL, the common benefit assessments in this case apply only to unfiled or state court cases *whose attorneys elected to become Participating Counsel in this MDL*."[10]  ER-47 (emphasis added).  If BCM did not wish to use MDL work product or be paid for performing common benefit

---

[10] BCM likewise fails to sufficiently counter any of the other six factors that Judge Campbell highlighted as having influenced Judge Chhabria's decision that are different from here:  (i) unlike in *Roundup*, much of the work product here is not public and would not be accessible to lawyers who are not Participating Counsel; (ii) unlike in *Roundup*, the PEC here took reasonable measures to ensure that only Participating Counsel receive access to common benefit work; (iii) unlike the *Roundup* court, Judge Campbell had no doubt that BCM's use of the trial package advanced the ball for its clients; (iv) as opposed to the very large verdicts in *Roundup*, whether lead counsel here will receive full compensation for the time and resources they devoted to the MDL remains an open question; (v) whereas the *Roundup* court noted that much of the settlement leverage acquired by the plaintiffs came from two verdicts in state court trials, rather than from work done in the MDL, the results in BCM's seven trials after the MDL were not better than the bellwether trial results; and (vi) completely opposite to here, the *Roundup* district court did not set a common benefit assessment amount at the beginning of the MDL and had not set an amount at the time it addressed these issues.  ER-47–51.  Based on these vastly different circumstances, a different conclusion as to whether the district court properly exercised its authority is warranted.

work, it could have elected not to serve on the PSC or become Participating Counsel. The Participation Agreement itself addressed this scenario. It defined "Covered Cases" as any case in the MDL. For Participating Counsel, "Covered Cases" also included "all un-filed cases, tolled cases, and/or cases filed in state court in which [Participating Counsel] have a fee interest." ER-149.

It was not mandatory that BCM serve on the PSC or become Participating Counsel. The Participation Agreement makes clear that "Non-Participating Counsel are not required to pay an assessment on state court cases or on un-filed cases." ER-149. The tradeoff for not paying assessments on such cases is that "counsel who do not sign the Participation Agreement are not entitled to receive Common Benefit Work Product, and may be subject to an increased assessment [if they later receive MDL work product]." ER-149. BCM opted to use MDL work product (extensively) for its non-MDL cases and applied for and received common benefit fees and expense reimbursement as Participating Counsel.

In *In re Cook Med., Inc.*, the attorneys similarly entered into a participation agreement that was later incorporated into the district court's order. 365 F. Supp. 3d at 695. The *Cook* court's holding is thus far more instructive than *Roundup*. In upholding the MDL district court's authority to impose assessments on attorneys' fees for all attorneys who signed the participation agreement, the *Cook* court explained that "[t]he source of the court's authority [was] in its discretion to

35

manage the litigation in combination with the voluntarily entered into agreement," which was "simply incorporated into an order the District Court was empowered to issue." *Id.* (quoting *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 617 F. App'x 136, 143 (3d Cir. 2015)).

Because the court was empowered to govern "how to compensate the Steering Committee for its work and because [the Participation Agreement] was incorporated into that order," the court had the jurisdiction to adjudicate fund claims by the attorneys participating in the common benefit fund process in the MDLs. *In re Cook Med., Inc.*, 365 F. Supp. 3d at 695 (alteration in original) (citation omitted); *see also In re Bos. Sci. Corp., Pelvic Repair Sys. Prods. Liab. Litig.*, No. MDL 2326, 2019 WL 385420, at *5 (S.D.W. Va. Jan. 30, 2019) ("The source of the court's authority is in its discretion to manage the litigation in combination with the voluntarily entered into agreement. . . . Because this court is empowered to 'govern how to compensate the Steering Committee for its work and because the Participation Agreement was incorporated into that order,' this court has the jurisdiction to adjudicate fund claims by attorneys participating in the common benefit fund process in the seven MDLs.") (alterations omitted) (citation omitted).

Additionally, BCM does not argue that it did not use common benefit work in other cases outside the MDL, nor would such an argument hold merit. Judge

Campbell's Order detailed how clearly and extensively BCM and its clients

benefitted from the MDL work product:

> BCM not only received the trial package containing a vast amount
> common benefit work ready for use in trials, but BCM also was not
> required in its unfiled and state court cases to take scores of
> depositions of Bard witnesses and general causation experts that were
> taken in the MDL. Nor was BCM required to obtain and review the
> numerous documents and ESI produced during consolidated pretrial
> discovery in the MDL. And it was lead MDL counsel, not BCM, who
> successfully opposed Bard's numerous motions in limine on general
> causation experts and its motion for summary judgment on
> preemption grounds.

ER-57–58 (citing Docs. 5396, 7369, 8872, 21632; *In re Bard IVC Filters Prods.*

*Liab. Litig.*, No. MDL 15-02641-PHX-DGC, 2017 WL 5625547 (D. Ariz. Nov. 22,

2017), *aff'd*, 969 F.3d 1067 (9th Cir. 2020) (preemption decision)).

Because BCM's non-MDL cases benefitted from common fund work, the

district court's authority to enforce common benefit assessments certainly extends

to those claimants. As the court in *In re General Motors* affirmed, courts that have

addressed whether district courts supervising an MDL have the authority to subject

any recovery in state-court or unfiled cases to an assessment "appear to be

unanimous in upholding assessments" when the plaintiffs' attorneys actually used

common benefit work product. 477 F. Supp. 3d at 184–85; *see also In re Prempro*

*Prods. Liab. Litig.*, No. 4:03-CV-1507 (BRW), 2014 WL 12758478, at *2–3 (E.D.

Ark. Nov. 25, 2014) (upholding that in cases where lawyers used common benefit

work, the recovery obtained in any state or federal forum was subject to an

assessment) ("A party cannot be permitted to use MDL-1507 common benefit work, and then avoid the 3% assessment.").

Ordering assessments on BCM's clients outside the MDL is directly in line with the purpose of the common benefit doctrine and a proper exercise of the district court's authority. *See In re Cook*, 365 F. Supp. 3d at 694 ("The common fund doctrine is an equitable exception that creates a fund 'for legal services beneficial to persons other than a particular client, thus spreading the cost of the litigation to all beneficiaries.'") (citation omitted)); *see also In re Gen. Motors*, 477 F. Supp. 3d at 190 ("Assessments ensure that Lead Counsel is appropriately 'compensated for their work not only by their own clients, but also by those other parties on whose behalf the work is performed and on whom a benefit has been conferred.' . . . And there are good reasons to conclude that these powers are broad enough to authorize assessments on recoveries arising from the Firms' clients' unfiled claims. . . . [B]y virtue of their relationship to counsel and counsel's relationship to the MDL, they belong to a subset of 'the entire universe' that benefited directly from the Common Benefit Work Product.") (citations omitted).

Moreover, no issue of subject matter jurisdiction exists because, as explained above, the district court's authority over the imposition of common benefit fund assessments arose from its inherent and statutorily-granted managerial power over the MDL, along with the common benefit doctrine, as opposed to the

Participation Agreement itself.  *See In re Avandia*, 617 F. App'x at 141–42, 143 (affirming the district court's order of holdbacks, including assessments applied to non-MDL cases and claimants) ("The District Court also permitted the Steering Committee to, essentially, trade work product for a share in the recovery in cases *not* before the MDL.  The District Court identified a form agreement that the Steering Committee and interested counsel must use to participate in the common benefit scheme and 'incorporated' the agreement into the order. . . . The [participation] agreement itself is not the source of the District Court's authority. Rather, the District Court's authority over this dispute arose from its responsibilities to appoint and supervise a coordinating committee of counsel."); *see also In re Baldwin–United Corp., (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 338 (2d Cir. 1985) (noting that a court has "authority" under the All-Writs Act "to enjoin and bind non-parties to an action when needed to preserve the Court's ability to reach or enforce its decision in a case over which it has proper jurisdiction").

In sum, pursuant to a combination of its inherent managerial powers, the MDL statute, and the common fund doctrine, the district court properly appointed lead counsel, created a common benefit fund, and exercised its authority to incorporate the Participation Agreement into CMO6.  Because BCM, as participating counsel, was bound by the Participation Agreement and appropriately

bound its non-MDL claimants—who also undeniably benefitted from common benefit work product—the district court can properly enforce assessments on such claimants not directly before it in the MDL.

**F.  Equitable Considerations Require Affirming The District Court's Order Imposing Holdbacks On All Of BCM's Cases.**

Judge Campbell was also correct to reject BCM's challenge to ACMO6 assessments on equitable grounds.  ER-64–65.  District courts possess inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (citation omitted); *see also Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) ("It is well established that district courts have inherent authority to control their docket.") (alterations omitted).  District courts thus maintain the "inherent authority to manage their dockets and courtrooms with a view towards the efficient and expedient resolution of cases."  *Dietz*, 136 S. Ct. at 1892.

Federal courts often exercise their inherent powers to "protect the due and orderly administration of justice" and "maintain the authority and dignity of the court."  *See Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (alteration omitted) (citation omitted) (upholding the order of contempt sanctions for those who abuse the judicial process); *Barnd v. City of Tacoma*, 664

F.2d 1339, 1342 (9th Cir.1982) (affirming the assessment of attorney's fees against counsel who conduct litigation in bad faith); *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (affirming that the district court has the inherent power to impose sanctions on counsel who "willfully abuse[s] judicial processes") (citation omitted). Indeed, inherent powers are based on equity. *In re Levander*, 180 F.3d 1114, 1118 (9th Cir. 1999).

Here, the MDL was properly transferred to the district court. And pursuant to its inherent authority to manage and organize the MDL, as well as the common benefit doctrine, the district court entered CMO1 to form a PSC to coordinate pretrial activities. The district court later issued CMO6, creating a common benefit fund and incorporating the Participation Agreement, and ACMO6 to increase the attorneys' fees assessment percentage based on significant unanticipated common benefit work. ER-130. BCM has been a member of the PSC since its creation, and throughout the duration of the litigation, BCM stood by, silent, while CMO6 and ACMO6 were entered.

BCM then stood by again as these orders were implemented, and to its benefit. BCM used common benefit work and applied for and was awarded compensation for common benefit work performed under CMO6. As Judge Campbell explained, "[t]he common benefit fund was established early in this MDL to ensure that attorneys who performed work for all plaintiffs and their

41

counsel would be reasonably compensated. . . . The PSC and other attorneys who performed compensable common benefit work justifiably relied on Participating Counsel's agreement to pay common benefit assessments on all cases in which Participating Counsel have a fee interest." ER-64–65. Therefore, if BCM were to avoid its obligation to pay for access to common benefit work, such a result would be an abuse of the judicial process.

By rejecting BCM's challenge to ACMO6 assessments, the district court is merely holding BCM to what it agreed to do: pay assessments in exchange for access to common benefit work. This is an equitable remedy within the inherent power of the district court to impose.

BCM applied for and was awarded compensation for common benefit work performed under CMO6 and its Participation Agreement. *See, e.g.*, ER-65. That compensation is funded by the CMO6 and ACMO6 assessments BCM now challenges. ER-44 (explaining purpose of assessments). More importantly, BCM benefitted handsomely from MDL work product. BCM litigated numerous cases after the MDL was closed. ER-112–14. Seven of the firm's cases were tried to a verdict. ER-114. BCM accessed the MDL-created trial package database more than 5,000 times. ER-98–100. It avoided considerable legal work (motions in limine, dispositive motions, deposition designations, etc.), and its clients avoided expenses for extensive discovery, including expert reports, depositions and, in

42

some cases, trial testimony. ER-57–58. Holding BCM to its agreement to pay for access to this work was not only equitable, it was just.

Also just was the district court's observation that exempting BCM from paying for work it used and agreed to pay would be detrimental to the orderly administration of this MDL, and any others. For one thing, the lawyers performing MDL work (including, until recently, BCM) rely upon Participating Counsel's agreement to pay for MDL work that those lawyers were spending time and treasure conducting for the benefit of all cases. ER-64–65. And, more importantly, the threat of having lawyers be allowed to promise to pay on all cases only to have that agreement nullified or dramatically modified *after* all the work was done will make it difficult to attract quality counsel to prosecute MDL litigation. ER-53. There is always some element of risk in any case. But those risks should not include lawyers reneging on payment obligations after the work is done. If BCM's position is adopted, many attorneys will be reluctant to invest the millions of dollars in time and expenses necessary to advance litigation knowing that the common benefit funds earmarked for such payment if the litigation is successful may be dramatically reduced by participating attorneys' gamesmanship in deciding when, where, and whether to file.

## CONCLUSION

BCM made a deal and benefitted handsomely from the terms of that deal. That deal was memorialized by and incorporated into a court order. BCM failed to object to that order, or its amendment. The district court not only had the authority to hold BCM and its clients to this deal, but also properly exercised its discretion in declining to change the terms of that deal when it came time for BCM to hold up its end of the bargain. The decision of the district court should be affirmed.

RESPECTFULLY SUBMITTED this 15th day of December, 2022.

GALLAGHER & KENNEDY, P.A.

By: */s/ Shannon L. Clark*
Shannon L. Clark
2575 E. Camelback Road
Phoenix, AZ 85016
*Attorneys for Appellees*

## STATEMENT OF RELATED CASES

There are no related cases.  BCM contends that *Roundup* is related, but, as set forth above, resolution of that case is not dispositive of this one.

DATED this 15th day of December, 2022.

GALLAGHER & KENNEDY, P.A.

By: */s/ Shannon L. Clark*
      Shannon L. Clark
      2575 E. Camelback Road
      Phoenix, AZ  85016
      *Attorneys for Appellees*

## CERTIFICATE OF COMPLIANCE

I am the attorney for Appellees.  I certify that this **brief contains 10929 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman typeface.  I further certify that this brief complies with the word limit of Cir. R. 32-1.

DATED this 15th day of December, 2022.

GALLAGHER & KENNEDY, P.A.

By: */s/ Shannon L. Clark*
     Shannon L. Clark
     2575 E. Camelback Road
     Phoenix, AZ  85016
     *Attorneys for Appellees*

46

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 15, 2022.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

DATED this 15th day of December, 2022.

GALLAGHER & KENNEDY, P.A.

By: */s/ Shannon L. Clark*
    Shannon L. Clark
    2575 E. Camelback Road
    Phoenix, AZ  85016
    *Attorneys for Appellees*