# In the United States Court of Appeals for the Ninth Circuit

No. 22-15872

_____

In re: BARD IVC FILTERS PRODUCT LIABILITY LITIGATION

DORIS JONES,
Plaintiff,
v.
C. R. BARD, INC., a New Jersey corporation; BARD PERIPHERAL
VASCULAR, INC., a subsidiary and/or Division of defendant C.R. Bard,
Inc., an Arizona corporation,
Defendants-Appellees

BABBITT & JOHNSON PA; BARON & BUDD, PC; COMMON BENEFIT
FEE AND COST COMMITTEE; BEUS GILBERT MCGRODER PLLC;
BOSSIER & ASSOCIATES PLLC; BRANCH LAW FIRM; BRENES LAW
GROUP, P.C.; DALIMONTE RUEB STOLLER LLP; FARACI LANGE LLP;
FARRIS RILEY & PITT LLP,
Appellees

v.

LAW OFFICES OF BEN C. MARTIN; MARTIN BAUGHMAN PLLC,
Movants-Appellants

_____

On Appeal from the U.S. District Court for the
District of Arizona, No. 2:15-md-02641-DGC
(Honorable David G. Campbell, Senior U.S. District Judge)

_____

REPLY BRIEF FOR APPELLANTS

_____

Howard J. Bashman
500 Office Center Drive
Suite 400
Fort Washington, PA 19034
(215) 830-1458

Ben C. Martin
BEN MARTIN LAW GROUP
3141 Hood Street, Suite 600
Dallas, TX 75219
(214) 761-6614

Counsel for Movants/Appellants

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................1

ARGUMENT IN REPLY ...........................................................2

   A. BCM Has Not Waived Its Ability To Challenge The District
       Court's Authority To Impose Attorneys' Fees And Costs
       Holdbacks On Claims And Cases That Were Never Part Of The
       MDL Proceeding .........................................................2

   B. Holding That An MDL Court Lacks The Power To Order Fees
       And Costs Holdbacks From Non-MDL Cases Would Not
       Impede Common Benefit Work In Future MDL Cases ......................13

CONCLUSION ......................................................................19

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Avandia Mktng. Sales Practices*,
   617 F. App'x 136 (3d Cir. 2015) ............................................................6, 11

*In re Genetically Modified Rice Litig.*,
   764 F.3d 864 (8th Cir. 2014).................................................................9, 10

*In re: Roundup Prods. Liab. Litig.*,
   2022 WL 16646693 (9th Cir. Nov. 3, 2022) ..............................................13

*In re: Roundup Prods. Liab. Litig.*,
   544 F. Supp. 3d 950 (N.D. Cal. 2021) ............................................2, 12, 14

*Koontz* v. *St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013) ......................9

*Mallory* v. *Norfolk S. Ry. Co.*,
   No. 21-1168 (U.S.) (argued Nov. 8, 2022) ..................................................7

*Mallory* v. *Norfolk S. Ry. Co.*, 266 A.3d 542 (Pa. 2021).....................................7, 8

*Townsel* v. *Contra Costa Cty.*, 820 F.2d 319 (9th Cir. 1987) .............................17

## Statutes

28 U.S.C. §1407(a) ...................................................................................17

**INTRODUCTION**

Well more than half of the Argument section of the Brief for Appellees that the Common Benefit Fee and Cost Committee has filed is devoted to arguing that appellants Martin|Baughman, PLLC and the Law Offices of Ben C. Martin (collectively referred to herein as BCM) should not be permitted to challenge the lawfulness of the district court's assessment of MDL common benefit attorneys' fee and costs holdbacks against cases never filed in any court, cases filed in federal court after the MDL had closed, and cases filed in state court because BCM has supposedly either waived such a challenge or agreed to the imposition of those assessments.

The district court, in ruling against BCM's challenge on the merits, appropriately did not rely on waiver. And whether BCM could be deemed to have agreed to the assessments through its conduct is immaterial because, under the unconstitutional conditions doctrine, the district court could not condition BCM's right to effectively represent its clients in the MDL on a blanket consent to extend the district court's power to assess fees and costs in cases that were never a part of the MDL, which the MDL court would otherwise be powerless to reach.

Turning to the merits, the Brief for Appellees has little more to offer than that fees and costs holdback orders in MDL proceedings routinely seek to reach cases never filed in any court, cases filed in federal court after the MDL had closed, and cases filed in state court. But, as Judge Chhabria noted in *In re: Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950, 967 (N.D. Cal. 2021) ("[f]ew of those holdback orders meaningfully consider the power of a district court to issue them"), just because such orders are routinely entered without sufficient scrutiny does not mean that they are lawful. Once, as by means of this appeal, sufficient scrutiny is brought to bear, the conclusion that an MDL court lacks the power to assess fees and costs holdbacks against cases that were never part of the MDL proceeding becomes inescapable.

## ARGUMENT IN REPLY

### A. BCM Has Not Waived Its Ability To Challenge The District Court's Authority To Impose Attorneys' Fees And Costs Holdbacks On Claims And Cases That Were Never Part Of The MDL Proceeding

The Common Benefit Fee and Cost Committee, in its Brief for Appellees, advances a number of arguments in the nature of waiver in an effort to avoid this Court's consideration of the merits of this appeal. Those merits-avoidance arguments fail to persuade. Indeed, even the district court did not

conclude that BCM lacked the ability to challenge the legality of the fees and costs holdback order to the extent that it reached cases that were never a part of the MDL proceeding.

This MDL proceeding began in August 2015 and grew to consist of more than 8,000 individual cases before the MDL closed in May 2019. ER-43. While the MDL proceeding was underway, whenever any case against defendant C.R. Bard alleging personal injuries from IVC filters was filed in or removed to any federal district court, the action would be subject to transfer to the MDL proceeding.

On December 18, 2015, the MDL court issued Case Management Order (CMO) 6, which provided that if any attorney or law firm having a case in the MDL proceeding sought access to the common benefit work generated in the MDL, then the attorney or law firm was required to consent to having fees and costs holdbacks applied not only to its cases within the MDL but also to its cases against Bard involving IVC filters that were never filed in any court, cases filed in federal court after the MDL had closed, or filed in state court. ER-142.

The Committee appellees argue that BCM waived its ability to challenge CMO 6's applicability to non-MDL cases by failing to object to the overbroad

scope of CMO 6 when it issued in December 2015. *See* Red Br. at 9. But the Committee has failed to establish that any of BCM's non-MDL cases even existed as of December 2015, and certainly BCM had not (and was not on the verge of) obtaining recovery in any such cases as of December 2015 even if those cases had existed then. In other words, BCM would not have had standing in December 2015 to challenge (nor would it have been ripe to challenge) the unlawful scope of CMO 6 because whether that unlawful scope would adversely affect BCM or its clients as of December 2015 was entirely hypothetical.

On May 31, 2019, the district court entered an order amending CMO 6 to increase the attorneys' fee component of the holdback that would apply to covered cases. ER-132. However, the May 31, 2019 order did not expand (or constrict) the scope of the non-MDL cases that CMO 6 purported to reach. *Id.* Moreover, as of May 31, 2019 BCM was not on the verge of settling its clients' cases against Bard. Such a settlement in principle was not reached until early November 2021. ER-112. At that point (meaning once the settlement was actually finalized), BCM and its clients had a concrete stake in whether or not CMO 6 could lawfully be applied to cases that were never a part of the MDL proceeding.

In January 2022, when funds from the settlements of BCM's clients' cases were beginning to arrive at the bank account designated for holding the MDL fees and costs holdbacks in this case, BCM filed a motion in the district court seeking an order that such holdbacks would not apply to non-MDL cases. ER-110. Consequently, this Court should conclude that BCM did not, by failing to object to CMO 6 in December 2015, or by failing to object to an increase in the attorneys' fee component of the holdback in May 2019, waive its ability to argue that fees and costs holdbacks cannot lawfully be applied to recoveries in cases that were never a part of the MDL proceeding. Rather, BCM presented that argument to the district court just as soon as standing and ripeness permitted.

The Committee appellees next argue that because the MDL court determined that BCM is bound through its conduct by the Participation Agreement, BCM should not be heard to object to the lawfulness of the MDL court's order insofar as it extends to apply fees and costs holdbacks against cases that were never a part of the MDL proceeding.[1] *See* Red Br. at 15-24.

---

[1] Both parties have noted in their principal briefs that neither side has found any evidence that BCM actually signed a Participation Agreement. *See* Blue Br. at 7; Red Br. at 16 n.7. The Committee appellees assert, however, that BCM does not deny having signed the document. *See* Red Br. at 16 n.7.

Once again, the district court did not conclude that BCM was precluded from having the merits of its objections to the lawfulness of applying fees and costs assessments considered because BCM was deemed bound by the Participation Agreement.

BCM recognizes that the Third Circuit, in its unpublished, non-precedential ruling in *In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 617 F. App'x 136, 142-44 (3d Cir. 2015), ruled that because the MDL court had authority over the Girardi Keese law firm due to its having signed a participation agreement, that sufficed to order that the holdback payments be made on all of that law firm's related cases, even those that were never pending in the MDL proceeding. BCM believes that *Avandia* was wrongly decided for all of the reasons advanced in BCM's opening brief.

The Committee's argument that BCM's objections to the unlawful scope of the MDL court's fees and costs holdback order to reach non-MDL cases must fail because BCM is deemed to have "consented" to those holdbacks

It is more accurate to say that BCM has no recollection of having signed the document. Whether BCM did or did not sign the document is of no moment here because the MDL court found that it bound BCM in any event, and BCM does not contend that fees and costs holdbacks cannot be applied to that law firm's cases that were a part of the MDL proceeding.

under the Participation Agreement should also be rejected under the so-called "unconstitutional conditions" doctrine. The U.S. Supreme Court is currently examining that doctrine's contours in the pending case of *Mallory* v. *Norfolk S. Ry. Co.*, No. 21-1168 (U.S.) (argued Nov. 8, 2022).

In the decision under review in *Mallory*, the Supreme Court of Pennsylvania agreed with the defendant railroad's argument that the unconstitutional conditions doctrine prohibited Pennsylvania courts from concluding that Norfolk Southern had "consented" to the exercise of general jurisdiction over the railroad in Pennsylvania courts, whether or not the claim in question had any relation whatsoever with Pennsylvania, based on the existence of a Pennsylvania statute explicitly stating that by registering to do business in Pennsylvania, a company consents to the exercise of general jurisdiction over it on all claims. *See Mallory* v. *Norfolk S. Ry. Co.*, 266 A.3d 542, 569 (Pa. 2021).

Pennsylvania's highest court ruled in *Mallory* that because Norfolk Southern had a legal right to conduct business in Pennsylvania, the Commonwealth of Pennsylvania could not lawfully condition the railroad's exercise of that right upon requiring that the railroad must first consent on a blanket basis to have general jurisdiction exercised over it in Pennsylvania

on all claims, including claims having nothing to do with Pennsylvania. *See id.*

The Committee's attempt here to invoke BCM's supposed "consent" to the Participation Agreement similarly runs afoul of the unconstitutional conditions doctrine. BCM has the legal right to represent its clients having claims in the MDL proceeding. In order to do so competently, BCM requires access to the common benefit work product created in the MDL proceeding. Because only the Committee was authorized by the MDL court to conduct the discovery necessary to bring the MDL cases to trial, BCM had no ability to replicate or even to attempt to replicate the discovery the Committee had conducted for its own cases in the MDL.

But to access those needed materials, the MDL court required not only that BCM have fees and costs holdbacks deducted from the recoveries achieved in cases that had been a part of the MDL proceeding, which the MDL court certainly had the power to require. Rather, the MDL court further mandated that BCM "agree" on a blanket basis to the condition, otherwise outside the MDL court's lawful authority, that the MDL court could assess fees and costs holdbacks on the recoveries of cases that never were pending in the MDL.

By conditioning BCM's ability to access the MDL work product necessary for BCM to competently represent its clients in the MDL proceeding upon the requirement that BCM agree that the MDL court could also assess fees and costs holdbacks on cases over which the MDL court otherwise had no jurisdiction or power to affect, the district court's order violated the unconstitutional conditions doctrine. *See Koontz* v. *St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013) ("A predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing.").

The Committee's remaining waiver arguments are so unsubstantial as to not require extended discussion. The Committee asserts that the waiver aspect of the Eighth Circuit's ruling in *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 870-71 (8th Cir. 2014), should preclude BCM from prevailing here, but it does no such thing. In that case, unlike here, the MDL Settlement Agreement created a global settlement process, completely absent from the Bard MDL, into which claimants could opt-in to participate to settle their claims. *See id.* at 867. A condition of participating in that global settlement

process was that the claimants who participated explicitly agreed to have the MDL fees and costs holdbacks deducted from their recoveries. *See id.*

An attorney named Phipps had clients of his who apparently did not have cases pending in the MDL proceeding participate in the global settlement process, but then Phipps argued that the MDL-related fees and costs should not be assessed against those clients. *See id.* at 870-71. The Eighth Circuit held that because Phipps never objected to having the MDL-related fees and costs assessed against his clients until after they participated in the global settlement process, with notice that such participation would result in the challenged assessments, he had waived any ability to object. *See id.*

Here, by contrast, BCM argues that MDL-related fees and costs should not be assessed against his clients whose cases were never a part of the MDL proceeding. Unlike attorney Phipps in *Genetically Modified Rice*, BCM did not bring its non-MDL clients into the MDL proceeding to participate in a global settlement. No such global settlement ever existed in this case. Here, the members of the Fee and Costs Committee settled their own inventories of cases and left everyone else to fend for themselves. As a result, the Committee's reliance on this aspect of the Eighth Circuit's ruling in *Genetically Modified Rice* as supporting waiver here is misplaced.

The Committee further argues that because BCM sought and received common benefit reimbursement for work that BCM performed in a state court proceeding against Bard, BCM should not be heard to object to having the fees and costs holdbacks apply against state court cases.[2] The Committee's argument mixes apples and oranges.

Of course common benefit work can be performed in a state court proceeding if it produces something useful to those with cases pending in the MDL. But merely because common benefit work might emerge from a state court case against Bard does not somehow confer on the MDL court the power to order how the recovery in that (or any other) state court case should be divided. The flaw in the Third Circuit's ruling in *Avandia*, which involved significant non-MDL litigation in California state courts, was that the Common Benefit Committee there should have sought and obtained a common benefit order from the California state court system, which would have obviated the need to have a federal district court overseeing an MDL case exceed that federal district court's lawful jurisdiction.

---

[2]   As noted in BCM's opening brief on appeal at 5, BCM only has one state court case that is at issue in this appeal, so the resolution of the Committee's waiver argument in this regard has extremely limited impact.

Lastly, in the equivalent of playing "Gotcha," the Committee has scoured the nation's Pacer archives to present this Court with an instance where BCM, in a separate MDL proceeding pending in the U.S. District Court for the Southern District of Indiana, was part of a group of attorneys who proposed that the MDL court adopt a fees and costs holdback order similar in scope to the one BCM is challenging in this case. *See* Red Br. at 13-14. That order was not before the district court in this case when it ruled on BCM's motion to exempt certain recoveries from MDL fees and costs holdbacks, so it is outside the record of this appeal, and BCM never had the opportunity to address the existence of that order before the district court in this case.

In any event, it is difficult to see how the Fee and Cost Committee believes the existence of that Indiana order helps its prospects of success in this appeal. This appeal concerns the lawful limits on the powers of a federal district court supervising an MDL proceeding. Whether BCM sought the entry of a similar order in other cases, or members of the Fee and Cost Committee in this case raised similar objections to the scope of holdback orders in other MDL cases where they were in BCM's position, is irrelevant. As Judge Chhabria observed in *Roundup*, 544 F. Supp. 3d at 967, "[f]ew of

those holdback orders meaningfully consider the power of a district court to issue them."[3]

For all of the foregoing reasons, this Court should reject the Committee appellees' argument that BCM has waived its ability to challenge the district court's power to apply MDL fees and costs holdbacks to cases that were never a part of the MDL proceedings.

## B. Holding That An MDL Court Lacks The Power To Order Fees And Costs Holdbacks From Non-MDL Cases Would Not Impede Common Benefit Work In Future MDL Cases

BCM believes that its opening brief sufficiently anticipated and responded to the arguments found in the Committee's Brief for Appellees that the district court had lawful authority to assess recoveries on non-MDL cases and that equitable considerations require affirming the district court's holdback order.

---

[3] On November 3, 2022, this Court issued a per curiam memorandum opinion dismissing as premature lead counsel's appeal from Judge Chhabria's refusal to impose fees and costs holdbacks against non-MDL cases. *See In re: Roundup Prods. Liab. Litig.*, 2022 WL 16646693 (9th Cir. Nov. 3, 2022). BCM agrees with the Committee appellees in this case, *see* Red Br. at 6 n.6, that BCM's appeal does not suffer from the same (or, for that matter, any other) prematurity issues that precluded this Court from reaching the merits in *Roundup*.

Consequently BCM is devoting the balance of this Reply Brief to addressing the so-called "elephant in the room": namely, would a ruling that an MDL court lacks the power to assess fees and costs holdbacks against cases that were never part of an MDL proceeding impede the successful pursuit of MDL recoveries in future cases.

BCM observed in its opening brief that no one contends that MDL proceedings cannot be successfully pursued in the Eighth Circuit, which has squarely held that MDL common benefit fees and costs cannot be assessed against non-MDL cases. *See* Blue Br. at 32. The Committee's Brief for Appellees has offered no response in that regard.

As explained above, and as Judge Chhabria noted in *Roundup*, 544 F. Supp. 3d at 966, where coordinated state court proceedings are occurring simultaneously with a federal court MDL proceeding, those lawyers performing common benefit work in the MDL case have the ability to ask the state court with jurisdiction over state court cases to enter an appropriate order compensating common benefit counsel for their work. BCM's appeal only involves one state court case, so such cases are not of great relevance to this appeal. But an available solution for non-MDL state court cases exists, where necessary.

This appeal predominantly involves cases filed in federal court after the Bard MDL concluded and cases that were never filed in any court. With regard to the latter category of cases, it is difficult to see how having had access to an MDL-created "trial package" served to increase the value of cases that were never filed in any court. Certainly, BCM did not need to access the online trial package to advance the ball in these cases, since they were never pending in any court.[4] The Committee failed to introduce into the record of this case any proof that it was the trial package, rather than BCM's experience in successfully litigating against Bard in remanded cases which had been a part of the MDL proceeding, that caused Bard to be willing to settle the claims of BCM clients who hadn't yet filed cases against Bard.

Not only is the impact of common benefit work on the settlement value of never-filed cases negligible and impossible to prove, but (as explained in more detail below) an MDL court could ultimately reach the recoveries in

---

[4]   The Committee asserts that BCM accessed the online trial package more than 5,000 times after January 2020. ER-50. As the Committee points out (*see* Red Br. at 42), BCM tried seven cases to verdict during the timeframe that it was accessing the trial package; each of those cases had been part of the MDL proceedings and then remanded back for trial. Those cases, BCM concedes, are properly subject to the MDL court's fees and costs assessments because they had been a part of the MDL proceeding.

cases that haven't yet been filed by keeping the MDL proceeding open so that, once filed, the cases become a part of the MDL.

The final category of cases to address are those that were filed in federal court after the MDL proceeding closed. The Committee asserts that lawyers could attempt to withhold cases from the MDL proceeding to avoid having to pay common fund fees and costs assessments on those cases (ER-88), but the Committee has no evidence that BCM did so here. Indeed, the Committee fails to respond in its Brief for Appellees to BCM's observation in its opening brief that BCM earned more in fees on average in cases that were a part of the MDL proceeding, notwithstanding that those cases were subject to the MDL proceeding's fees and costs holdbacks. *See* Blue Br. at 31. Stated another way, if the average recovery per case remained the same, BCM would have earned more, even after deducting the MDL fees and costs holdbacks, had all of its clients' cases been part of the Bard MDL proceeding. No financial incentive existed to hold back cases from the MDL proceeding by waiting to initiate them until after the MDL closed.

Further, the Committee and the district court are wrong to suggest that a law firm has the unrestricted ability to refrain from filing suit in a case simply to keep it away from an MDL proceeding. Each case has its own

applicable statute of limitations, and thus a lawyer has limited ability to endlessly hold back cases from being filed, because if a case is not filed in a timely manner it will ultimately have no worth. *See Townsel* v. *Contra Costa Cty.*, 820 F.2d 319, 320-21 (9th Cir. 1987).

If and when the Bard MDL should close was something over which BCM had no control. By contrast, the district court, with input from the Committee, had complete control over whether to close that MDL proceeding. If the Committee believed that, to obtain a fair recovery for its common benefit work, the MDL should have been kept open so that more cases could be transferred to or filed in it, then the Committee could have argued to the district court that the MDL should be kept open. Under 28 U.S.C. §1407(a), the statute authorizing multidistrict litigation, an individual case can be remanded back to the transferor court when pretrial proceedings in that case have concluded, even if the MDL proceeding itself remains ongoing.

In short, the way to address an MDL court's lack of power to apply common benefit fees and costs assessments against yet-to-be-filed cases is to keep the MDL open until those cases are filed, rather than concluding that a

federal district court has power to enforce such assessments against later filed cases even though they had never been a part of the MDL proceeding.

For all of the foregoing reasons, to the extent that this Court wishes to consider the consequences on MDL practice of a ruling that a district court cannot lawfully assess MDL holdbacks on cases that were never a part of the MDL proceeding, there is no reason to conclude that attorneys who perform common benefit work in an MDL case will necessarily be inadequately compensated. Moreover, lawful ways to ensure adequate compensation for common benefit work are available that do not require a district court to exceed well-established constraints on the lawful exercise of its power.

**CONCLUSION**

For these reasons, and the reasons set forth in BCM's opening brief, this Court should reverse the district court's order and hold that the district court lacked the power to impose common benefit attorneys' fee and costs holdbacks on the settlement recoveries from C.R. Bard of BCM's clients who never filed suit in any court, who filed suit in state court, and who filed suit in federal court after the MDL proceeding closed.

Respectfully submitted,

Dated: February 6, 2023       /s/ *Howard J. Bashman*

Howard J. Bashman
500 Office Center Drive
Suite 400
Fort Washington, PA 19034
(215) 830-1458

Ben C. Martin
BEN MARTIN LAW GROUP
3141 Hood Street, Suite 600
Dallas, TX 75219
(214) 761-6614

Counsel for movants/appellants

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,001 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Book Antiqua font.

Dated: February 6, 2023                    /s/ *Howard J. Bashman*
                                           Howard J. Bashman

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 6, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 6, 2023          */s/ Howard J. Bashman*
                                Howard J. Bashman